(No. 35677.—

The People *ex rel.* Henry J. Spitzer, Appellee, *vs.* The County of La Salle *et al.*, Appellants.

*Opinion filed September 29, 1960.*

DAILY and KLINGBIEL, JJ., dissenting.

HARLAND D. WARREN, State's Attorney, of La Salle, for appellant the County of La Salle; and JOHNSON, COLMAR, O'MEARA & DE PREE, of Chicago, (JAMES J. O'-MEARA, JR., RUSSELL E. Q. JOHNSON, and HOWARD J. DE PREE, of counsel,) for appellant J. L. Jacobs and Co.

JOHN S. MASSIEON, of Peru, and BERRY & O'CONOR, of Streator, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

On October 21, 1955, the county of La Salle, by and through the tax committee of the board of supervisors of the county, entered into an agreement with J. L. Jacobs and Company for the preparation of a detailed property record system of all assessable commercial and industrial real property and tangible personal property in La Salle County. That agreement provided that J. L. Jacobs and Company should prepare and provide property record card forms including the description and location of real property, acreage and dimensions, ground plan sketch, owner's name and address, the appraised value of land and improvements, and upon the personal property record card the name and address of the owner, the location and description of the tangible personal property, the appraised valuation of each class of tangible personal property such as inventories of goods and merchandise, works in process, furniture, fix-

tures, machinery and equipment; that the company should collect and analyse real-property data on present construction costs, sales, rentals and other data for use in determining land values, building replacement costs, depreciation and obsolescence allowances, establish base front-foot, square-foot or acreage-unit values for each parcel of commercial or industrial property, prepare building appraisal schedules from an analysis of local building material and labor costs, sales and rentals, prepare tangible personal property appraisal schedules with all appraisal standards and procedures for land and building valuation to be reviewed by the company with township assessors and county assessment officials and finally approved by the tax committee of the county board of supervisors; the valuation of commercial and industrial land to be determined by applying approved base unit land values and recorded on property record cards and township maps; each commercial, industrial and accessory building to be measured, sketched on record cards, with notations of type of construction, height, etc., and priced from appraisal schedules; each building to be field inspected by company appraisers; inspect and list major items of tangible personal property on personal property record cards, and establish the value of the tangible personal property from appraisal standards for each commercial or industrial establishment and record the same. The county agreed to furnish all real-property identification material to the company, provide access to all records relating to the property to be systemized, and working space. The company agreed to complete the work no later than May 1, 1956, and to make periodic reports of progress. For this service the county agreed to pay the sum of $65,000.

Performance was begun under the terms of that contract and records for 4,864 pieces of property were completed and systematized. On December 14, 1956, the county of La Salle, again acting by and through the tax committee of the county board of supervisors entered into a second

contract with J. L. Jacobs and Company. The second contract related to noncommercial and nonindustrial real estate, and was otherwise identical to the earlier contract, and provided a total fee for services of $179,500. Performance was also begun on this contract.

The county had paid approximately $50,000 to J. L. Jacobs and Company for services rendered under the contracts when the plaintiff, Henry J. Spitzer, as relator, filed his complaint in the circuit court of La Salle County on March 5, 1957, praying that the agreements be declared unlawful, null, void, *ultra vires,* and contrary to public policy; that the parties be enjoined and restrained from any performance thereunder; that the county of La Salle and its county treasurer be enjoined and restrained from drawing warrants for any payments pursuant thereto, or from collecting any amount for the payment of the contract obligations; that defendant J. L. Jacobs and Company pay the costs of the proceeding and that all monies paid by the county to J. L. Jacobs and Company be declared illegal; that the county be restrained from payment of public funds, and that they be ordered restored. Among the allegations of the complaint, the plaintiff contended that the statute pursuant to which the agreements were executed (Ill. Rev. Stat. 1955, chap. 34, par. 25.16) was unconstitutional and did not grant the power to the county to so contract.

Issue was joined and the cause was tried in the circuit court of La Salle County. The plaintiff's witnesses consisted of numerous experienced attorneys, the county clerk, and the county recorder of La Salle County, each of whom testified they were unable to define the phrase "property record system" in the statutory provision in question. Defendants' witnesses were the executive director of the National Association of Assessing Officers; the supervisor of the property tax division of the Department of Revenue of the State of Illinois; and a partner of J. L. Jacobs and Com-

pany in charge of the division of taxation and appraisal. They each testified that the questioned phrase had a definite meaning to experienced assessment personnel, was commonly used in the State of Illinois, and was generally a detailed record of data pertaining to physical aspects of individual properties and their values, ascertained pursuant to pre-scribed rules and regulations, and recorded on various records and documents useful to assessment officials.

The trial court found that the agreements were *ultra vires* and void in that they attempted to bestow upon the defendant J. L. Jacobs and Company the power to perform certain duties imposed by law upon assessors and proscribed to others, and granted the relief prayed by the complaint.

Defendants appealed to the Appellate Court, Second District, which court, in a lengthy opinion, affirmed the judgment of the circuit court of La Salle County. (23 Ill. App. 2d 139.)

Defendants contend (1) that the decree of the trial court, affirmed by the Appellate Court, is erroneous in that it declares the agreements *ultra vires,* null and void; and (2) that admitting, for the sake of argument only, that the agreements are *ultra vires,* J. L. Jacobs and Company is nevertheless entitled to recover and retain the reasonable value of the services rendered in the preparation of the prop-erty record system.

In 1955, section 25.16 of the law in relation to counties empowered the county board of each county "To expend monies for the preparation, establishment and maintenance of a detailed property record system which would provide information useful to assessment officials. Such record shall be available to all assessing officials. The County Board may enter into contracts with persons, firms or corporations for the preparation and establishment of such record system." (Ill. Rev. Stat. 1955, chap. 34, par. 25.16.) Under this provision it is clear that the county board had the authority to enter into a contract for a property record

system. We are called upon to determine whether the board had the authority to enter into the agreements here in question.

Under the terms of these agreements, J. L. Jacobs and Company is to collect and analyse real-property data on costs, sales, rentals, agricultural income, other information for determining land values, building replacement costs, depreciation and obsolescence allowances for various classes of property; establish basic unit front-foot and land-acreage values for each parcel of real estate; prepare building replacement cost schedules reflecting building customs and practices of the community based upon definite specifications; review the appraisal standards and procedures so determined and established with the township assessors and the county assessment officials and submit them to the tax committee of the county board of supervisors for final approval. Thereafter the company appraisers and field assistants shall view, measure and sketch each parcel and building, inspect the exterior and interior of buildings and record all information. Company employees shall then apply prices according to the appraisal schedules. By this method the company is to establish a value for each parcel of land and for each building to be recorded on the property record cards. By a somewhat similar procedure the company is directed to prepare assessment schedules, standards and procedures for tangible personal property and establish a record value for each such property.

Section 1 of article IX of the constitution of 1870 provides, in part, that "The general assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the general assembly shall direct, and not otherwise." Pursuant to the directions of the constitution the General Assembly provided for the

election of township assessors (Ill. Rev. Stat. 1955, chap. 139, par. 60) ; provided that each assessor shall take an oath to support the constitutions of the United States and of the State of Illinois, and to appraise all of the property in the county at its fair cash value (Ill. Rev. Stat. 1955, chap. 120, par. 488) ; and to actually view each tract or lot of land, assess the same at its fair cash value, and record the same. Ill. Rev. Stat. 1955, chap. 120, par. 524.

The constitution provides that "some person or persons, to be elected or appointed in such manner as the general assembly shall direct" shall ascertain the value of the property to be taxed in the State of Illinois. The legislature has provided by section 25.16 of the law in relation to counties, that the county board may contract with persons, firms or corporations for the preparation and establishment of a detailed property record system. This the General Assembly may legitimately do, pursuant to the constitutional mandate.

The plaintiff insists, however, that the county board could not enter into these contracts here in issue for the reason that they infringe upon the duties of the assessor, and the empowering act is indefinite as to what "a detailed property record system" actually comprises.

We have determined that the ascertainment of the value of properties for taxation may be vested only in such persons as are determined by the legislature and the constitution prohibits the fixing of values for taxation purposes by any other persons. (*People ex rel. Toman* v. *Marine Trust Co.* 375 Ill. 488; *People ex rel. Nash* v. *Norton,* 358 Ill. 272.) The act enabling the county board to provide a detailed property record system does not appear to permit the valuation of property for taxation by the appointed persons, firms or corporations. Plaintiff relies upon the case of *People ex rel. Cutmore* v. *Harding,* 333 Ill. 384, wherein we held that neither the county board nor the board of assessors had

authority to contract for the services of persons other than assessors or regularly appointed deputy assessors to assess property for taxation, since no statutory authority existed for the payment of compensation at a greater rate than that fixed by the statute for assessors and deputy assessors and there was no statutory authority to contract for any other persons to perform the services of assessor or deputy assessor. The contract for the employment of personnel in a reassessment program requires services "which section 12 of the law imposes upon the assessors, requiring them, in person or by deputy, to actually view and determine, as near as practicable, the value of each tract or lot of land listed for taxation as of the first day of April of each year and assess the same at the value required by law. They do not constitute the mere gathering and recording of information. They are in no sense clerical duties but are of the essence of the duty of the assessor in actually viewing and determining the value of each tract or lot and assessing the same at the value required by law."

At the time of the execution of the contracts questioned in the *Harding case,* there was no statutory authority empowering their execution. Here the legislature, pursuant to constitutional mandate, has empowered the county board to enter into these contracts, provided they do not exceed the limits of propriety.

The contracting company here is to provide record cards, maps, sketches, details of construction and location, replacement costs, schedules, standards and procedures for determining value, valuations as determined by the company, and much other information in regard to the taxable property of La Salle County. Nothing contained in these contracts usurps the duties of the assessing officials. They are not bound by the findings of the company, they still must view and make their determination of value for taxation, but are provided with much useful information

and standards of procedure whereby properties may be more correctly valued, based upon information instead of guess, and equality of assessment may be more nearly attained. Thus the assessing officials may more accurately carry out the directions of the constitution and the General Assembly. The contracts do not call for assessment or reassessment of taxable property, but only the compiling of information and the establishment of tools to make assessment more uniform and more nearly correct. They do not infringe upon the duties of the assessor.

Plaintiff insists, however, that the meaning of "a detailed property record system" is so nebulous as to, in fact, be incapable of definition. Consequently it is contended that the county could not lawfully enter into these contracts.

Plaintiff's witnesses testified that the phrase "detailed property record system" was not capable of definition, and that its meaning was unknown to them. The many witnesses presented by plaintiff were attorneys practicing in La Salle County and surrounding areas, the La Salle County clerk and the La Salle County recorder. Defendants presented Albert W. Noonan, executive director of the National Association of Assessing Officers, and who had been city assessor of Birmingham, Michigan, technical director of a reassessment project in Richmond, Virginia, and director of revaluation of Brunswick, Georgia; Eugene Maynard, supervisor of the property tax division of the Department of Revenue of the State of Illinois; and Martin D. Miller, a partner in the firm of J. L. Jacobs and Company, defendant, and in charge of the division of taxation and appraisal of that company. Miller had been consultant to the departments of revenue of Kentucky, Illinois, Nevada, Iowa, and many counties and municipal governments, and was the author of the Real Property Assessment Manual of the State of Illinois.

The three witnesses for defendants testified that the

phrase "a detailed property record system" has a definite meaning among assessment officials and the tax field in general. They each testified that the phrase meant the compiling and recording of information essential to the physical location, characteristics and value of taxable properties, useful to the appraisal and assessment process. The witnesses Noonan and Maynard testified further that such a system would incorporate property record cards of the size, location, and other conditions in regard to the property, tax maps, land-value maps, classification and building cost schedules, and rules for the systematic valuation of properties. These witnesses were qualified as experienced experts in the assessment and tax fields.

We have held that a statute is sufficiently certain if the words and phrases employed have a technical or other special meaning sufficiently well known to enable those within their reach to apply them. (*Boshuizen* v. *Thompson & Taylor Co.* 360 Ill. 160; *People ex rel. Gutknecht* v. *City of Chicago,* 414 Ill. 600; *Joseph Triner Corp.* v. *McNeil,* 363 Ill. 559.) Plaintiff's witnesses were not shown to be experts or engaged in the assessment field. Defendants' witnesses positively testified to a special and technical meaning attached to this phrase known and used among assessment officials and personnel. These contracts fit within the meaning of the phrase.

Moreover, on July 17, 1959, section 25.16 was amended by enactment of section 25.16a and a new paragraph was added stating: "The detailed property record system shall include up-to-date and complete tax maps except where these are otherwise already available or ordered, ownership lists, valuation standards, property record cards, including appraisals, for all or any part of the property in the county in accordance with reasonable rules and procedures prescribed by the Department of Revenue, but such system and records shall not be considered to be assess-

ments nor limit the powers and duties of assessing officials." Ill. Rev. Stat. 1959, chap. 34, par. 425.

Where a court has construed the terms used in an act, and the legislature thereafter attempts by amendment to define those terms, the reasonable presumption is that the court's construction was not in accord with the original intent of the legislature. (*Modern Dairy Co.* v. *Dept. of Revenue,* 413 Ill. 55.) The trial court on June 6, 1958, found that section 25.16 of the law relating to counties as it existed in 1955, did not constitute authority for the contracts entered into between these defendants. We have a right to look to subsequent amendatory legislation to arrive at the correct meaning of the terms of the statute, where the legislature has attempted to define those terms. *Modern Dairy Co.* v. *Dept. of Revenue,* 413 Ill. 55.

The term "detailed property record system" is sufficiently definite and certain, has an established meaning in the field, and the statute does, therefore, empower the county board to enter into the contracts here in question.

The contracts are thus properly executed between the parties, and are not *ultra vires.* The contracts being legal and proper, the company is entitled to collect for its services thereunder and to perform the services required. It is unnecessary to consider any question in regard to the company's right to recover for their services by *quantum meruit.*

The judgment of the Appellate Court is reversed and the cause is remanded to the circuit court of La Salle County for the entry of a decree dismissing each count of the complaint.

*Reversed and remanded, with directions.*

DAILY and KLINGBIEL, JJ., dissenting.