(No. 44331.—

THE VILLAGE OF DEERFIELD, Appellant, v. ERNEST E. RAPKA *et al.*, Appellees.

*Opinion filed April 5, 1973.—Rehearing denied June 1, 1973.*

GOLDENHERSH, J., and UNDERWOOD, C.J., dissenting.

THOMAS A. FORAN, of FORAN & WISS, and RICHARD V. HOUPT, of PEDERSEN & HOUPT, both of Chicago, for appellant.

HALL, MEYER, FISHER, HOLMBERG, SNOOK & MAY, and CONZELMAN, SCHULTZ, O'MEARA &

SNARSKI, both of Waukegan (EDWARD R. HOLMBERG, JR., HENRY D. FISHER, and MURRAY CONZELMAN, of counsel), for appellees.

MR. JUSTICE WARD delivered the opinion of the court:

The plaintiff, Village of Deerfield, filed a petition in the circuit court of Lake County to condemn approximately 127 acres of land lying outside of but immediately adjacent to the plaintiff's corporate limits. The petition represented that the purpose of the acquisition was for the establishment of a playground or recreational center as allegedly authorized under division 95 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, pars. 11—95—1 through 11—95—14). The defendants, who are owners of certain parcels included in the land sought to be condemned, filed a motion to dismiss the petition on the ground, among others, that the plaintiff was without the statutory power to condemn the property. The circuit court dismissed the petition, and its decision was affirmed by the appellate court. (132 Ill. App. 2d 74, 268 N.E.2d 67.) We allowed the plaintiff's petition for leave to appeal.

Section 11—95—1 of the Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 11—95—1) provides as follows:

> "The corporate authorities of every municipality with a population of less than 500,000 may dedicate and set apart for use as playgrounds, or recreation centers, any land or buildings which are owned or leased by the municipality and are not dedicated or devoted to another and inconsistent public use. Such a municipality, in such manner as provided by law for the acquisition of land or buildings for public purposes by the municipality, may acquire or lease land or buildings, or both, within or beyond the corporate limits of the municipality, for playgrounds and recreation centers."

The parties agree that section 11—95—1 authorizes acquisition by purchase, as is indicated by the further provision in that section that no land shall be acquired nor

any appropriation made for its acquisition except after approval by a referendum. Neither section 11—95—1 nor any of the other sections of division 95 expressly authorizes the acquisition of property by the exercise of the power of eminent domain, however. The only other provision referring specifically to a particular mode by which real property may be acquired is found in section 11—95—5, which authorizes the acceptance of a grant or devise of such property.

It is the plaintiff's contention, however, that the power granted by section 11—95—1 to acquire land cannot be limited to acquisition by purchase or other forms of voluntary transfer, but must be understood as including the power to acquire by condemnation. The plaintiff bases this contention in part upon the language in section 11—95—1 which empowers the municipality to acquire property "in such manner as provided by law for the acquisition of land or buildings for public purposes by the municipality." That phrase, according to the plaintiff, is to be read as incorporating the provisions of another section of the Municipal Code, section 11—61—1 (Ill. Rev. Stat. 1971, ch. 24, par. 11—61—1), which reads:

"The corporate authorities of each municipality may exercise the right of eminent domain by condemnation proceedings in conformity with the provisions of the constitution and statutes of the State of Illinois for the acquirement of property useful, advantageous or desirable for municipal purposes or public welfare including property in unincorporated areas outside of but adjacent and contiguous to the municipality where required for street or highway purposes by the municipality."

As originally enacted in 1949 (Laws of 1949, p. 478) the section did not contain the closing portion which now follows the word "welfare." That portion was added in 1961 (Laws of 1961, p. 2425). The defendants suggest that the 1961 amendment represented a legislative limitation of the eminent domain power conferred by section 11—61—1 to property lying within the corporate limits,

except in the case of property required for street or highway purposes. Plaintiff, on the contrary, maintains that the final clause now contained in section 11—61—1 cannot be construed as precluding the condemnation sought here, since section 11—95—1 expressly extends the power of acquisition to property lying outside the municipal boundaries.

So far as we are advised, neither section 11—61—1 nor section 11—95—1 has received any prior judicial construction on the point at issue, and the matter is admittedly not free from difficulty. The antecedent of section 11—95—1 was an act of 1915 entitled "An Act to provide for the acquisition, equipment, conduct and maintenance of public playgrounds in and by cities having a population of less than one hundred fifty thousand (150,000)." (Laws of 1915, p. 312.) Section 5 of that act provided: "All cities, villages and towns voting to adopt the provisions of this act are hereby vested with power and authority to purchase, accept by gift, or condemn by the exercise of the right of eminent domain of such real estate as the voters may elect to acquire as herein provided." The act of 1915 was repealed in 1921 as part of a new act which was almost identical to that of 1915. (Laws of 1921, p. 674, sec. 8.) Section 5 of the 1921 act contained the same provisions as section 5 of the 1915 act.

In 1923 the 1921 act on playgrounds was amended. (Laws of 1923, p. 256.) Section 2 of the 1923 act contained language similar to that found in section 11—95—1 of the present Municipal Code authorizing a municipality to acquire or lease property within or beyond the municipal limits for the purpose of establishing playgrounds and recreation centers "in such manner as may now or hereafter be authorized or provided by law for the acquisition of lands or buildings for public purposes by such municipality." Neither section 2 nor any other section of the 1923 act continued the express authorization which had been contained in the prior legislation to

acquire property through the power of eminent domain. Section 87—4 of the 1941 Revised Cities and Villages Act repealed the 1921 act governing playgrounds. (Laws of 1941, vol. 2, p. 408.) Section 57—1 of the 1941 revision (Laws of 1941, vol. 2, p. 252) carried forward, with some changes in language, the provisions of section 2 of the act as amended in 1923, and corresponds to the present section 11—95—1 enacted in 1961.

We note that in other instances where an act authorizes municipalities to engage in an activity which may require the acquisition of land, the act itself will typically contain its own provisions with respect to the power of eminent domain. (See, *e.g.,* Ill. Rev. Stat. 1971, ch. 24, pars. 11—65—3, 11—68—4, 11—71—1, 11—94—1; *cf. Department of Public Works and Buildings v. Ells, 23 Ill.2d 619, 621.*) This is also true with respect to other acts authorizing the acquisition of land for park or recreational purposes. Thus the act empowering certain Forest Preserve Districts to acquire land for recreational facilities provides that they may do so by purchase, gift or condemnation. (Ill. Rev. Stat. 1971, ch. 57½, par. 15a3.1, 15a3.8.) Park Districts, which are also given the power to furnish playgrounds, recreation centers and other recreational facilities, are authorized to acquire land by gift, purchase, or condemnation, but with the proviso that the power of condemnation may be exercised only as to land situated within the district. Ill. Rev. Stat. 1971, ch. 105, pars. 5—2, 8—1(b), 8—10.

However, under the plaintiff's argument there was a broad power of condemnation for municipal purposes which existed under section 11—61—1 prior to its amendment in 1961. The amendment was not designed, the argument is, to repeal or lessen the broad municipal authority to condemn. It was intended to insure a power to condemn, for street purposes, land outside but adjacent and contiguous to the municipality. The argument is persuasive. Taking the language of the amendment we do

not consider it was calculated to repeal the broad power to condemn which existed under the statute before amendment. There is an express power given a municipality under section 11—95—1 to acquire property either within or beyond the municipal limits "in such manner as provided by law for the acquisition of land or buildings for public purposes." Taking this, together with the power to condemn under section 11—61—1, the plaintiff had the power to condemn beyond its limits.

The plaintiff also maintains that the mere use of the term "acquire" in section 11—95—1 in itself implies the power to acquire by eminent domain. In view of our holding that the eminent domain power exists under section 11—61—1 we need not consider the merits of this contention.

As required by section 11—95—1, the plaintiff submitted the question of acquiring the property to a referendum, the result of which was favorable. The defendants contend, however, that the referendum was invalid because it combined in a single proposition the question whether the property should be acquired and the question whether bonds should be issued to meet the cost of acquisition, and thus violated section 18 of article II of the Illinois constitution of 1870. That section, which provides that all elections shall be free and equal, has been construed as requiring that separate and independent questions may not be combined in one proposition in such a way as to place a voter in the position of having to vote for or against both questions when he might otherwise favor one but oppose the other. See *O'Connor v. Board of Education, 288 Ill. 240.*

The defendants concede that since the proposition limited the issuance of bonds to providing for the acquisition of the land, no voter who voted favorably on the issuance of bonds could be regarded as opposing the acquisition. The defendants point out, however, that a voter who favored the acquisition of the land but opposed

the financing of the purchase through bonds (as opposed, for example, to a regular tax levy) was given no opportunity to express his opposition to the bonds without voting against the acquisition.

It should be observed that this court has considered that the constitutional proscription under discussion was against the combining of separate and unrelated questions into a single proposition for submission to a vote. Conversely it has been held that where a submitted proposition did not contain separate and unrelated questions, the proposition was not violative of the constitution. (*Routt v. Barrett, 396 Ill. 322.*) The simple circumstance that a proposition contained more than one question has not made it constitutionally defective. (*Roll v. Carrollton Community Unit School Dist., 3 Ill.2d 148.*) We held in *Schoon v. Board of Education, 11 Ill.2d 91,* that a single proposition asking electors to approve the issuance of bonds to permit the construction and equipping of a new school building and also to permit the construction of additions to existing structures was not constitutionally objectionable. In *Roll* a proposition to issue bonds for the purposes of purchasing a site for a high school and constructing the school, of building a new grade school and of constructing an addition to an existing school building was alleged to have been unconstitutional. Holding that the proposition was not illegal we said: "In our view the designated purposes are sufficiently connected and related to each other in nature to satisfy the constitutional provision." 3 Ill.2d 148, 151.

We judge that the questions in the proposition here were not separate and unrelated in the constitutional sense.

Finally, the defendants contend that section 11—95—1 is invalid because it contains no territorial limitations; that the plaintiff failed to prove a *prima facie* case for the necessity of condemning defendants' property; and that the plaintiff did not make a good faith attempt to acquire

the property by agreement. We do not find that any of these contentions can be sustained.

So far as the claimed invalidity of section 11—95—1 is concerned, we recognized in *Village of Schiller Park v. City of Chicago, 26 Ill.2d 278,* that the legislature may validly confer upon a municipality a power of condemnation to be exercised over property lying beyond its corporate limits and within the limits of another municipality, and that if such power should be abused, protection would be afforded by the courts. As to the proof of necessity, the plaintiff established a *prima facie* case when it introduced in evidence its ordinance reciting a need for the establishment of a recreational center. *Decatur Park District v. Becker, 368 Ill. 442, 445; Trustees of Schools v. Sherman Heights Corp., 20 Ill.2d 357, 359.* With regard to the third contention, the record shows that the plaintiff did offer to purchase the property but that the defendants made no response, thus sufficiently establishing an attempt to acquire the property without condemnation.

For the reasons given, judgment of the appellate court is reversed and the cause is remanded to the circuit court for proceedings in conformity with this opinion.

*Judgment reversed; cause remanded.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent from the majority opinion and would affirm the judgment of the appellate court. The principle is firmly established that a municipal corporation has the right of eminent domain only when the grant of power is specifically conferred by legislative enactment (*Department of Public Works and Bldgs. v. Ryan, 357 Ill. 150*), and that the statute purporting to authorize the exercise of the power will be strictly construed. *Harvey v. Aurora and Geneva Ry. Co., 174 Ill. 295; Indiana Harbour Belt R.R. v. Green, 289 Ill. 81.*

As stated in the majority opinion, section 11—61—1 of the Municipal Code, when enacted in 1949, contained

no mention of property in unincorporated areas and the language "including property in unincorporated areas outside of but adjacent and contiguous to the municipality where required for street or highway purposes by the municipality" was added in 1961. In *Western National Bank of Cicero v. Village of Kildeer, 19 Ill.2d 342, at 353,* the court said: "The interpretation placed upon a statute by the legislative department may go far to remove doubt as to its meaning, and it is proper for us to consider the subsequent amendment to a statute in determining the intend and meaning of the statute prior to amendment. [Citations.] The addition of a new provision in a statute by amendment is an indication of the absence of its implied or prior existence."

Not infrequently, following judicial interpretation of a statute, an amendment is enacted, in which event "[s]uch a statutory change is usually equivocal, suggesting either that the legislative body has effected a conscious change in policy (*Western National Bank of Cicero v. Village of Kildeer, 19 Ill.2d 342, 353*), or that it has simply prevented the recurrence of an erroneous interpretation (*People ex rel. Spitzer v. La Salle County, 20 Ill.2d 18, 28*)." (*People ex rel. Clark v. Wheeling, 24 Ill.2d 267, at 269.*) It is noted that there was no appellate decision interpreting section 11—61—1 between the dates of its enactment in 1949 and its amendment in 1961.

In its opinion the majority attributes to the amendment a purpose not considered in any prior authorities and concludes that the amendment "was intended to insure a power to condemn, for street purposes, land outside but adjacent and contiguous to the municipality." The reason for "insuring" a power which has not been questioned is not stated, nor can it be ascertained from the language of the opinion.

Applying long-established principles to the interpretation of the statutes here involved it is apparent that the "broad municipal authority to condemn" to which the

majority refers was limited to property within the boundaries of the municipality and the purpose of the 1961 amendment was to broaden the scope of the power to the extent for which it specifically provides.

MR. CHIEF JUSTICE UNDERWOOD joins in this dissent.