THE CITY OF PEORIA, Plaintiff-Appellee, *v.* CLARENCE W. KEEHNER *et al.*, Defendants-Appellants—(The Township of Medina *et al.*, Intervening Appellants).—THE CITY OF PEORIA, Plaintiff-Appellee, *v.* COMMERCIAL NATIONAL BANK OF PEORIA, Trustee, *et al.*, Defendants—(The Township of Medina *et al.*, Intervening Appellants).

Third District   Nos. 82—202, 82—167, 82—172, 82—118, 82—181 cons.

Opinion filed June 3, 1983.

HEIPLE, J., specially concurring.

Jack Cassidy, of Cassidy & Mueller, and Kehr Law Offices, P.C., both of

Peoria, for appellant Chillicothe Township Park District.

Tim Bertschy, of Heyl, Royster, Voelker & Allen, of Peoria, for appellant Township of Medina.

Anthony P. Corsentino, Ltd., of Peoria, for appellants Clarence W. Keehner and Leona Mae Keehner.

Tim Swain, Beth Johnson, David L. Thomas, and Eric Margolis, all of Peoria, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

This appeal arises out of condemnation proceedings filed by the city of Peoria for the purpose of acquiring 495 acres of land outside the boundaries of the city for park and recreation purposes.

In 1977 the city of Peoria and the Pleasure Driveway and Park District of Peoria entered into an intergovernmental cooperation agreement whereby the city agreed to use its powers of condemnation to acquire certain land north and east of the city and to convey the land to the Peoria Park District for development and operation as an extension of Robinson Park. Although Robinson Park was totally within the boundaries of both the city and the park district, the 495-acre tract to be condemned was all outside the boundaries of both the city and the park district and was neither contiguous nor adjacent to the city borders. The property in question is located within Medina Township and Chillicothe Township Park District, and is partly bluff land, partly productive farm land.

After the condemnation action was filed Medina Township and Chillicothe Township Park District were allowed to intervene. The landowners and the intervenors filed motions to dismiss and traverses. Following a 10-day evidentiary hearing, the trial court ruled that the city had the authority to bring these condemnation actions, and motions to dismiss were denied. Subsequently a jury trial was held to fix compensation for the land to be taken. The jury awarded $334,318.80 to the Keehners for their land. No appeal is taken from the amount of compensation. Instead, the owners and the intervenors have perfected this appeal from those orders of the trial court denying the motions to dismiss the petitions for condemnation.

Although the appellants advance a number of arguments in support of their contention that these condemnation actions should have been dismissed, we believe the determinative issue is whether the city

has authority to condemn land outside its boundaries under either its general home-rule powers or under section 11—95—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 11—95—1), or both, in the absence of a referendum.

In its amended petition for condemnation the city alleged, *inter alia*, that it is a home rule unit pursuant to article VII, section 6(a), of the Illinois Constitution of 1970 and may exercise any power and perform any function pertaining to its government and affairs; that this petition is brought pursuant to the authority granted under section 11—95—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 11—95—1), and the city's general home rule powers; that section 11—95—1 authorizes the city to acquire and develop land within or beyond its corporate boundaries for playgrounds and recreational centers; and that the land to be condemned is necessary for a recreational center which the city seeks to construct for the residents of the city and surrounding area.

The general power of a municipality to condemn property contained in section 11—61—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 11—61—1) provides as follows:

> "The corporate authorities of each municipality may exercise the right of eminent domain by condemnation proceedings in conformity with the provisions of the constitution and statutes of the State of Illinois for the acquirement of property useful, advantageous or desirable for municipal purposes or public welfare including property in unincorporated areas outside of but adjacent and contiguous to the municipality where required for street or highway purposes by the municipality."

Obviously, this section does not specifically authorize municipalities to condemn lands beyond their borders for park or playground purposes. The city contends that the broad grant of power under section 11—61—1, when considered together with the authorization for extraterritorial condemnation for playground and recreation center purposes contained in section 11—95—1 of the Illinois Municipal Code, is sufficient to permit a home-rule municipality to engage in extraterritorial condemnation for the desired purpose without a referendum.

■ Section 11—95—1 of the Illinois Municipal Code provides in part as follows:

> "The corporate authorities of every municipality with a population of less than 500,000 may dedicate and set apart for use as playgrounds, or recreation centers, any land or buildings which are owned or leased by the municipality and are not dedicated or devoted to another and inconsistent public use. Such a

municipality, in such manner as provided by law for the acquisition of land or buildings for public purposes by the municipality, may acquire or lease land or buildings, or both, within or beyond the corporate limits of the municipality, for playgrounds and recreation centers. *** But no land or buildings shall be so acquired or leased for a playground or recreation center nor shall any appropriation be made for the acquisition *** of a playground or recreation center unless the question of such acquisition or appropriation has been *** submitted *** to the voters at an election in the municipality *** and a majority of the votes cast on the proposition were or are in favor of that action." (Ill. Rev. Stat. 1981, ch. 24, par. 11—95—1.)

This statute permits extraterritorial acquisition of land for playground and recreation center purposes by municipalities but only after referendum approval by the voters of the municipality. No referendum was held in the case at bar.

The city argues that a home rule unit need not hold a referendum prior to exercising a function pertaining to its government and affairs and that authorization by ordinance adopted by the city council here was sufficient.

The grant of powers to home rule units in section 6(a) of article VII of the 1970 Illinois Constitution states that "a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

However, for obvious reasons, the requirement that the home rule powers must pertain to the government and affairs of the municipality was intended to restrict home rule powers to local subjects, not those of State or regional concern. (See Baum, *A Tentative Survey of Illinois Home Rule (Part I): Powers and Limitations*, 1972 U. Ill. L. F. 137, 153.) And the language of the constitutional provision has been held "not to confer extraterritorial sovereign or governmental powers directly on home-rule units," but rather "that whatever extraterritorial governmental powers home-rule units may exercise were to be granted by the legislature." *City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 485, 338 N.E.2d 19, 21.

■ *City of Carbondale v. Van Natta* involved an attempt by the city to enforce its zoning ordinance against persons residing outside the city limits but within 1½ miles of its boundary. The supreme court held that the home-rule provisions of the constitution did not give the city extraterritorial zoning powers and that such authority

could only come from the legislature. The court specifically distinguished extraterritorial acts which are proprietary in nature from those acts which are governmental. The acquisition of land beyond the municipal boundaries by purchase or gift was said to be an act of a proprietary nature and thus within the home-rule powers of a municipality, but the power to exercise rights of sovereignty over such property is not within the constitutional grant of home-rule powers. (*People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 391 N.E.2d 807.) The exercise of eminent domain is an attribute of sovereignty and therefore is a governmental power, not a proprietary power. 56 Am. Jur. 2d *Municipal Corp.* sec. 200 (1971).

The Illinois Supreme Court has recently reaffirmed these principles. In *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 432 N.E.2d 227, the court had before it a municipal service tax that required nonresident sellers of services to pay and collect a tax even though the service is performed outside the city. The court concluded that the city of Chicago was attempting to give extraterritorial effect to its ordinance and to tax services that have no connection with the city. After restating the rule that the constitution does not give home-rule units extraterritorial governmental powers, the court went on to observe:

"Considering the number of local governmental units in this State, particularly in and around the Chicago area, which possess or could elect to possess home rule powers, it is apparent that unrestrained extraterritorial exercise of those powers in zoning, taxation and other areas could create serious problems. ***. The drafters of our constitution limited the extraterritorial exercise of home rule powers to those exacted by the General Assembly, and the General Assembly has the power to limit the extent of such grants of power as may be necessary." 89 Ill. 2d 45, 78-79, 432 N.E.2d 227, 243.

The city of Peoria in the case before us argues that a home rule municipality may modify "internal requirements"—such as the statutory requirement of referendum approval contained in section 11–95–1—and may proceed to condemn land outside its boundaries without prior approval by the electors. The city relies upon two cases which held that statutory requirements for referenda did not apply to certain home rule functions. In *Sommer v. Village of Glenview* (1980), 79 Ill. 2d 383, 403 N.E.2d 258, the supreme court held that section 162a of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 643a) providing for a referendum on the establishment of higher or lower tax rate limitations was an unconstitutional limitation on home-

rule units. In an earlier case, *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 290 N.E.2d 240, the court held that a pre-1970 statute (Ill. Rev. Stat. 1969, ch. 34, par. 306), requiring that a county hold a referendum before issuing general obligation bonds, was inapplicable to a home-rule county. In *Sommer*, a home-rule municipality sought to exercise its taxing power which was expressly listed as a home-rule power under section 6(g) of article VII of the 1970 Illinois Constitution. Similarly, the power to incur debt involved in *Kanellos* is expressly granted in section 6(g). Neither *Sommer* nor *Kanellos* involved the extraterritorial exercise of home-rule powers, and neither involved condemnation, and on those grounds, both are distinguishable from the case before us. Furthermore, neither case held that extraterritorial exercise of home-rule powers was exempt from legislative limitation.

■ We conclude that *Commercial National Bank v. City of Chicago* and *City of Carbondale v. Van Natta* are controlling here. We hold that the city of Peoria has only such power to condemn land beyond its boundaries as is granted to it by the legislature, and the legislature has limited that power by a requirement that a referendum be held approving the acquisition of property for playground and recreation center purposes.

We are not unaware that the extraterritorial application of section 11—95—1 of the Illinois Municipal Code was challenged in *Village of Deerfield v. Rapka* (1973), 54 Ill. 2d 217, 296 N.E.2d 336. There a non-home-rule municipality sought to condemn approximately 127 acres of land outside of but immediately adjacent to its corporate limits for the stated purpose of establishing a playground or recreation center. The court upheld the validity of the statutory authorization which permits a municipality to condemn property for playground and recreation center purposes beyond its borders, but expressly noting that a referendum had been held which was favorable. Thus non-home-rule municipalities, such as the village of Deerfield, may condemn land beyond their borders for playground and recreation center purposes by express legislative authority if the voters approve.

This fact becomes important when we consider the decision in *Krughoff v. City of Naperville* (1977), 68 Ill. 2d 352, 369 N.E.2d 185, where our supreme court said:

"In *City of Carbondale v. Van Natta* 61 Ill. 2d 483, 338 N.E.2d 19, the court held that although the 1970 Constitution did not confer extraterritorial sovereign or governmental powers on home rule units of local government, a home rule municipality possessed the same statutory powers to zone extraterritorially

as non-home-rule municipalities." (68 Ill. 2d 352, 357, 369 N.E.2d 185, 187.)

The court in *Krughoff* concluded that it would be immaterial whether the municipality had home-rule power to enact the zoning ordinance being challenged if statutory authority had been granted.

■ ■ Here we are confronted with an attempt by a home-rule municipality to exercise extraterritorially its sovereign power to condemn land without meeting the referendum requirement of the statute which is its only source of authority for taking land outside its corporate limits. We hold the statute applies with equal force to home-rule and to non-home-rule units, and we therefore conclude that the city of Peoria is without authority to condemn the land which is the subject of this litigation.

The city of Peoria argues that the owners and intervenors lack standing to claim that a referendum of city voters was required since those objecting are not residents of the city and would not be entitled to vote in a city election. We consider this issue to have been waived by the city. It was not presented to the trial court and may not be raised for the first time upon appeal.

It is also argued that the city's proposal to develop a 500-acre park and conservation area does not come within the meaning of the words "playground and recreation center" as used in section 11—95—1 of the Illinois Municipal Code, considered above. We are inclined to agree that the city's plan seems to stretch the concepts of "playground" and "recreation centers" to unheard of limits, better left to be defined by the legislature, but we need not decide that issue. We have determined that the city failed to conduct the required referendum, and therefore that the city's petition should have been dismissed. We need go no further in disposing of this appeal.

Accordingly, the judgment of the circuit court of Peoria County is reversed.

Reversed.

SCOTT, J., concurs.

JUSTICE HEIPLE, specially concurring:

The bottom line of the majority opinion is correct. The city of Peoria should not prevail in this eminent domain proceeding. Thus, the judgment of the trial court must be reversed.

The majority opinion, however, grounds its reversal on the city's failure to have held a referendum but ignores the core issue of the

city's power to condemn property outside its corporate limits. In this case it should be held that the city lacks the power to condemn. Hence, the question of holding or not holding a referendum would be, under such circumstance, immaterial.

In the instant case, the city of Peoria is attempting to condemn 80 acres of land, ostensibly for the expansion of Robinson Park, which is on the north end of the city. This land is not within the corporate limits of the city. It is located within the Medina Township and the Chillicothe Township Park District, and is partly bluff land and partly productive farmland. The property in question is neither adjacent nor contiguous to the boundaries of the city because it is separated from the city by a 66-acre strip of park owned by the Medina Township.

It is commonly known, though officially unacknowledged, that this acquisition is sought as part of a tax-grab package by the city of Peoria in its continuing efforts to move the city limits north as far as Mossville so as to acquire the Caterpillar Tractor plant in that area for taxing purposes. In this case, the city's interest in acquiring additional land for park purposes is a thinly disguised subterfuge.

In support of its authority to condemn extraterritorially, the city relies upon section 11—61—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 11—61—1), which provides as follows:

"The corporate authorities of each municipality may exercise the right of eminent domain by condemnation proceedings in conformity with the provisions of the constitution and statutes of the State of Illinois for the acquirement of property useful, advantageous or desirable for municipal purposes or public welfare including property in unincorporated areas outside of but adjacent and contiguous to the municipality where required for street or highway purposes by the municipality."

The city argues that section 11—61—1 should be read in conjunction with section 11—95—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 11—95—1), which provides in relevant part as follows:

"The corporate authorities of every municipality with a population of less than 500,000 may dedicate and set apart for use as playgrounds, or recreation centers, any land or buildings which are owned or leased by the municipality and are not dedicated or devoted to another and inconsistent public use. Such a municipality, *in such manner as provided by law for the acquisition of land* or buildings for public purposes by the municipality, may *acquire* or lease *land* or buildings, or both, within or *beyond the corporate limits* of the municipality, for playgrounds

and recreation centers." (Emphasis added.)

Apparently the city argues that the words *"\*\*\** in such manner as provided by law for the acquisition of land *\*\*\*"* refer to the condemnation power found in section 11—61—1; and, thus, the city can condemn land both within and without its boundaries.

There is a basic rule that municipalities do not have powers extending beyond their corporate boundaries except as specifically conferred or necessarily implied by statute. (*City of Rockford v. Hey* (1937), 366 Ill. 526, 533; *City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 485; *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 79.) It appears that section 11—61—1 is simply a general statement of a municipality's authority to condemn property within its own borders. It speaks of an authority to condemn extraterritorially only with regard to streets and highways.

The city, in support of its claim, relies upon the holding in *Village of Deerfield v. Rapka* (1973), 54 Ill. 2d 217. In that case, the supreme court, despite the compelling reasoning in the dissent of Justice Goldenhersh and joined by Justice Underwood, held that the village of Deerfield had the authority to condemn 127 acres of land lying outside but immediately adjacent to the plaintiff's corporate limits.

The *Deerfield* holding must be reevaluated. That decision over-ruled a cogent unanimous opinion of the Second District Appellate Court which had affirmed the dismissal of the lawsuit by the trial judge. (*Village of Deerfield v. Rapka* (1971), 132 Ill. App. 2d 74.) Ten years have passed since the supreme court rendered its *Deerfield* opinion. Two members of the majority remain on the court. Two members of the dissent remain on the court. Three members of the court are new members. The rationale of the trial judge, the unanimous appellate court and the two dissenting members of the supreme court compellingly dictate a reconsideration and reevaluation of that 10-year-old decision.

If the supreme court is not to reevaluate its decision in *Village of Deerfield*, then the situation is one that ought to be addressed by the General Assembly. Otherwise, the people of Illinois could be confronted by the spectacle of cities condemning land for playground and recreational purposes as far removed from the city boundaries as city finances and the geographic limits of the State of Illinois would allow. The possibilities are endless and subject to great abuse. The only limiting factor, theoretically, is financial. Cities ought not be in the business of using eminent domain proceedings to condemn property for playground and recreational purposes outside their corporate limits. The statutes do not permit it. And to the extent that *Village of Deer-*

*field* purports to authorize such practice, that decision should be reconsidered.

A grant of the power of eminent domain is subject to strict construction against the entity exercising the power since its exercise is in derogation of the rights of the citizen. (*Forest Preserve District v. Wike* (1954), 3 Ill. 2d 49, 54.) In *People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 366, the supreme court noted that there "is a distinction between the right to acquire property outside of its corporate limits and the power to exercise rights of sovereignty over such property." Examples of the former right are proprietary rights whereby a municipality can acquire property by purchase or lease or gift. Examples of the latter power are the powers to pass zoning laws with extraterritorial effect or to condemn property extraterritorially. The word acquire can have a broad meaning. After reviewing article 11 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 11—1—1 et seq.), I can only conclude that the word "acquire" as used in section 11—95—1 does not necessarily mean "condemn" as used in section 11—61—1.

Where the legislature wished to include the power to condemn within the meaning of the word "acquire," the legislature has explicitly so stated. Furthermore, where the legislature intended a municipality to have the power to condemn property extraterritorially, this power also has been expressed in the particular section of the Municipal Code. It was observed by the appellate court in *Village of Deerfield v. Rapka* (1971), 132 Ill. App. 2d 74, 76, *rev'd* (1973), 54 Ill. 2d 217, that "[t]he Municipal Code of 1961 contains ten articles, three of which (Articles 7, 9 and 11) deal with property acquisition *** 48 divisions of these articles deal with property acquisition by municipal corporations. Thirty-five of these specifically delegate to the municipality the power of eminent domain to acquire property. The other 13 divisions, including that in question here, do not make specific reference to the power to condemn."

The legislature was clearly capable of including the power to condemn in statutes if it so wished. A few examples may prove beneficial: Section 11—65—3 provides that "*** city may acquire by dedication, gift, lease, contract, purchase, or condemnation all property *** within the corporate limits of the city, for municipal convention hall ***" (Ill. Rev. Stat. 1981, ch. 24, par. 11—65—3); section 11—68—4 provides that "*** board *** shall select a suitable site *** within or without the city for a stadium *** acquire title *** by accepting a donation or devise or by purchase or condemnation ***" (Ill. Rev. Stat. 1981, ch. 24, par. 11—68—4); section 11—94—1 provides that "any

municipality *** has the power to *** acquire *** natatoriums or swimming pools *** by purchase, gift or condemnation ***" (Ill. Rev. Stat. 1981, ch. 24, par. 11—94—1); section 11—103—2 provides that "every municipality *** may, for airport *** purposes acquire by dedication, gift, lease, contract, purchase or condemnation *** all property *** within and outside the corporate limits ***." (Ill. Rev. Stat. 1981, ch. 24, par. 11—103—2.) It is interesting to note that section 11—97—2 allows municipalities to establish driveways from the corporate limits of the municipalities to parks owned by the municipality outside its corporate limits. The municipality may "acquire the land *** by purchase, devise or gift, or *** by condemnation ***." (Ill. Rev. Stat. 1981, ch. 24, par. 11—97—2.) If the legislature had bestowed upon municipalities a broad power to condemn property extraterritorially for park purposes, there would have been no need for this statute because surely municipalities would have been already empowered to condemn roadway property as part and parcel of the park.

By following the old rules of statutory interpretation that the legislature does not enact surplusage and that expression of one is exclusion of the other, one can only conclude that a municipality's authority to condemn property is limited to property within its borders unless the authority is set forth in a statute as explicitly as in the statutes discussed above. Section 11—95—1 explicitly authorizes a municipality to "acquire" property "beyond the corporate limits." However, the section does not explicitly include the power to condemn within the statement of authority to acquire. This strongly suggests that the legislature did not intend to authorize a municipality to condemn property extraterritorially for playground purposes.

Section 11—95—1 only refers to the right to acquire property. The section does not explicitly provide for extraterritorial condemnation powers. Authority to condemn property extraterritorially is found in section 11—61—1, which authority, as discussed above, is limited to the condemnation of property in unincorporated areas adjacent and contiguous to the municipality where required for street or highway purposes. Therefore, the holding in this case should be that the city of Peoria cannot extraterritorially condemn the subject nonadjacent and noncontiguous property for playground and recreational purposes.