(No. 83987.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, v. DANIEL RAMSEY, Appellant.

*Opinion filed August 10, 2000.*

BILANDIC, J., specially concurring.

FREEMAN, J., joined by McMORROW, J., also specially
concurring.

Charles M. Schiedel, Deputy Defender, and Lawrence Bapst, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield and Karen Andrews, State's Attorney, of Carthage (Barbara A. Preiner, Solicitor General, and William L. Browers and Jay Paul Hoffman, Assistant Attorneys General, of Chicago, of counsel), for the People.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

Following a jury trial in the circuit court of Hancock County, defendant, Daniel Ramsey, was convicted of two counts of first degree murder, three counts of attempted first degree murder, and one count each of aggravated criminal sexual assault, home invasion and residential burglary. In finding defendant guilty of these offenses, the jury rejected defendant's claim that he was insane under section 6—2 of the Criminal Code of 1961, as amended by section 15 of Public Act 89—404 (720 ILCS 5/6—2 (West 1996)). The jury also determined that defendant was eligible for the death penalty based on the cold, calculated and premeditated manner of the crimes. 720 ILCS 5/9—1(b)(11) (West 1996).

After a sentencing hearing, the jury found that there were no mitigating factors sufficient to preclude imposition of a death sentence. The trial court then sentenced defendant to death. In addition, the court sentenced defendant to terms of imprisonment on his convictions for attempted murder, aggravated criminal sexual assault, home invasion, and residential burglary. Defendant's death sentence has now been stayed pending direct review by this court. Ill. Const. 1970, art. VI, § 4(b); 134 Ill. 2d Rs. 603, 609(a). For the reasons that follow, we reverse defendant's convictions and remand for a new trial.

At issue in this appeal is the law governing defen-

dant's insanity defense. The trial proceedings utilized the version of the insanity defense statute as amended by section 15 of Public Act 89—404 because that was the version of the law in effect when the crimes were allegedly committed. The amended version of the law was significant because it altered the definition of insanity. Under the amendment, a defendant could no longer raise an insanity defense based on his inability "to conform his conduct to the requirements of law."[1] In addition, the amendment increased a defendant's burden of proof for an insanity defense from "a preponderance of the evidence" to "clear and convincing evidence." See Pub. Act 89—404, § 15 (eff. August 20, 1995), codified at 720 ILCS 5/6—2(a), (e) (West 1996).

When defendant's insanity defense failed, he argued in his post-trial motion that the amended version of the insanity defense statute was unconstitutional and should not have been followed because Public Act 89—404 violated the single subject rule in article IV, section 8, of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). Defendant asserted that because of Public Act 89—404's constitutional infirmities, he should have been tried under the former version of the law with its broader definition of insanity and its less stringent burden of proof.

Although the trial court rejected defendant's constitutional challenge, its ruling came before our opinion in *People v. Reedy*, 186 Ill. 2d 1 (1999), which was filed while this appeal was pending. In *Reedy* our court held that Public Act 89—404 does violate the single subject rule and is unconstitutional in its entirety. *Reedy*, 186 Ill. 2d at 12. As a result, the law is void *ab initio*; " '[i]t is *** as though no such law had ever been passed.' " *People v.*

---

[1]Public Act 89—404 did not change the other prong of the definition of insanity, which permits a defendant to argue that he is not guilty because he "lacks substantial capacity to appreciate the criminality of his conduct." 720 ILCS 5/6—2(a) (West 1996).

*Gersch*, 135 Ill. 2d 384, 399 (1990), quoting *People v. Schraeberg*, 347 Ill. 392, 394 (1932). Section 6—2 of the Criminal Code therefore remained as it was before the adoption of Public Act 89—404's amendments (*Gersch*, 135 Ill. 2d at 390), and those amendments should not have been applied at defendant's trial. The judgment of the circuit court must therefore be reversed and the cause remanded for a new trial in accordance with the version of the law in effect prior to Public Act 89—404.

In reaching this conclusion, we note that the General Assembly has now enacted new legislation containing the same revisions to the insanity defense statute originally included in Public Act 89—404. The new legislation, set forth in Public Act 90—593, section 15, is not claimed to suffer from the same single subject rule problems that rendered Public Act 89—404 invalid, and we must presume it to be constitutional (see *People v. Hickman*, 163 Ill. 2d 250, 257 (1994)). The new law, however, cannot be applied on retrial.

Application of criminal or penal measures to events occurring before their enactment is restricted by article I, section 10, of the United States Constitution, which provides that "[n]o State shall *** pass any *** ex post facto Law" (U.S. Const., art. I, § 10) and by article I, section 16, of the Illinois Constitution (Ill. Const. 1970, art. I, § 16), which contains similar language. Our court has held that a "law is *ex post facto* if it makes criminal an act that was innocent when done, if it increases the punishment for a previously committed offense, or if it alters the legal rules of evidence to make conviction easier." *People v. Shumpert*, 126 Ill. 2d 344, 351 (1989); accord *People v. Franklin*, 135 Ill. 2d 78, 107 (1990); see *Brewer v. Peters*, 262 Ill. App. 3d 610, 613 (1994). A law which abolishes an affirmative defense of justification or excuse constitutes an *ex post facto* law because "it expands the scope of a criminal prohibition after the act

is done." *Collins v. Youngblood*, 497 U.S. 37, 49, 111 L. Ed. 2d 30, 43, 110 S. Ct. 2715, 2723 (1990); see also *Beazell v. Ohio*, 269 U.S. 167, 169, 70 L. Ed. 216, 217, 46 S. Ct. 68, 68 (1925) (a law is *ex post facto* if it "deprives one charged with [a] crime of any defense available according to law at the time when the act was committed").

Under these standards, application of Public Act 90—593 to defendant's case would violate the prohibition against *ex post facto* laws for two reasons. First, it would deprive defendant of an affirmative defense he possessed under the former version of the statute, namely, that he is not guilty because he lacked the capacity " 'to conform his conduct to the requirements of the law.' " See *United States v. Samuels*, 801 F.2d 1052, 1054 & n.1 (8th Cir. 1986) (holding *ex post facto* clause precludes retroactive application of amendment to federal insanity defense statute eliminating identical prong of insanity defense), quoting *United States v. Frazier*, 458 F.2d 911, 918 (8th Cir. 1972); *United States v. Kowal*, 596 F. Supp. 375, 378 (D. Conn. 1984) (same); *United States v. Lakey*, 610 F. Supp. 210, 212-13 (S.D. Tex. 1985) (same). Second, by increasing the burden of proof a defendant must meet in order to establish that he was insane at the time of the offense, the amendment makes it easier for the State to secure a conviction. See, *e.g., People v. Eckhardt*, 156 Ill. App. 3d 1077, 1080 (1987) (holding that shift in burden of proof relating to insanity defense would be improper *ex post facto* application of statute if applied to a trial for an offense committed prior to the amendment to the law); *People v. Ahmad*, 206 Ill. App. 3d 927, 937 (1990) (same).

In a supplemental brief ordered by our court, the State agrees with this conclusion and concedes that an application of Public Act 90—593's provisions at defendant's retrial would violate *ex post facto* principles.

For the foregoing reasons, defendant's convictions

and sentences are reversed, and this cause is remanded for a new trial. On retrial, defendant shall be allowed to assert an insanity defense in accordance with section 6—2 of the Criminal Code as it existed prior to the amendments contained in Public Acts 89—404 and 90—593. Specifically, defendant shall be allowed to present an insanity defense based on his inability to conform his conduct to the law. In addition, he shall only be required to prove his insanity at the time of the offense by a preponderance of the evidence.

*Reversed and remanded with directions.*

JUSTICE BILANDIC, specially concurring:

I agree with the holding that Public Act 89—404 is void *ab initio.*

During the pendency of this appeal, the General Assembly enacted a different act, Public Act 90—593. Public Act 90—593 reenacted the amendment to the insanity defense statute that was originally included in the void act. The parties' initial briefs did not address the effect of Public Act 90—593 on this case. Consequently, this court *sua sponte* ordered supplemental briefing. We directed the parties to brief the issues of "whether Public Act 90—593 applies retroactively to [defendant] and, if so, whether retroactive application of Public Act 90—593 would violate the constitutional prohibitions against *ex post facto* application of the law." The parties complied.

Defendant maintains that Public Act 90—593 does not apply retroactively to him under principles of statutory construction. In the alternative, defendant asserts that retroactive application would result in *ex post facto* violations.

The State does not address whether Public Act 90—593 applies retroactively to defendant. Nonetheless, the State concedes that retroactive application would violate the constitutional prohibitions against *ex post facto* laws.

The majority opinion determines that the constitu-

tional prohibitions against *ex post facto* laws prohibit retroactive application of Public Act 90—593 to defendant. I would not address the *ex post facto* issue, for the reasons explained below.

*Ex post facto* literally means after the fact. Black's Law Dictionary 520 (5th ed. 1979). Both the United States and Illinois Constitutions prohibit the state from enacting an *ex post facto* law. U.S. Const., art. I, § 10 (providing that "[n]o State shall *** pass any *** ex post facto Law"); Ill. Const. 1970, art. I, § 16 (providing that "[n]o ex post facto law *** shall be passed"). Essentially, this prohibition means that the legislature cannot change a criminal or penal law, after the fact, to be less favorable to a defendant regarding events that occurred before the change. See generally *Carmell v. Texas*, No. 98—7540 (U.S. May 1, 2000) (discussing meaning of prohibition). It therefore follows that the constitutional prohibitions against *ex post facto* laws are not implicated *unless* the legislature is changing a law after the fact. Here, because legislative intent is clear that Public Act 90—593 is not to be applied retroactively, there is no reason to conduct an *ex post facto* analysis. The principle is well established that courts will not consider a constitutional question if the cause can be determined on other grounds. *E.g.*, *People ex rel. Waller v. 1990 Ford Bronco*, 158 Ill. 2d 460, 464 (1994). Consequently, I would determine this cause solely on the basis that Public Act 90—593 does not apply retroactively to defendant.

## I. Applicable Precedent

This case is analogous to *People v. Digirolamo*, 179 Ill. 2d 24, 50 (1997). There, this court was presented with an issue of whether an amendment to a statute would apply in that appeal. Defendant was convicted of the offense of obstructing justice. The State, however, failed to prove at trial the venue in which the offense occurred. Because venue was an established element of the

offense, this failure necessitated reversal of that conviction. After defendant's trial, the venue statute was amended to remove the necessity of proving venue to obtain a criminal conviction. The State argued that the amended statute should be applied on appeal to sustain defendant's conviction. *Digirolamo*, 179 Ill. 2d at 49-50.

In resolving this issue, this court in *Digirolamo* followed a long line of Illinois cases where, in determining whether the amendment applied, we utilized the legislative intent approach and its substantive-procedural distinction. Under this approach, an amendment to a statute is generally construed to apply prospectively and not retroactively, unless the legislature intended a retroactive application of the amendment and the amendment affects only procedure or remedies. *Digirolamo*, 179 Ill. 2d at 50. Accordingly, this test begins with the presumption that a new statute will not be applied on appeal unless the legislature expressly provides for such application. The language of the amendment at issue showed that the legislature did not intend a retroactive application. Also, the amendment effected a change in more than procedure or remedies. We therefore held that the amendment could not be applied retroactively to defendant, and we reversed his conviction for that offense. *Digirolamo*, 179 Ill. 2d at 50-52. Given that the amendment was not applied retroactively to defendant, there was no possibility of an *ex post facto* violation.

In the present case, there is no indication that the legislature intended Public Act 90—593 to apply retroactively. Also, the statutory amendment at issue affects substantive rights, not procedure or remedies. Therefore, pursuant to *Digirolamo*, Public Act 90—593 cannot be applied retroactively to defendant. This appeal could be resolved on that basis alone.

## II. Inapplicable Precedent
As noted, this case turns on whether the amendment

to the insanity defense statute contained in Public Act 90—593 may be applied retroactively to defendant. *Digirolamo* and *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282 (1996), contain seemingly contradictory statements concerning when to apply an amended statute on appeal. *Digirolamo* provides that, "[g]enerally, an amendment to a statute will be construed to apply prospectively and not retroactively" unless the legislature intended a retroactive application of the amendment and the amendment affects only procedure or remedies. *Digirolamo*, 179 Ill. 2d at 50. *Armstead* states that, with regard to statutory amendments, "a reviewing court should simply apply the law as it exists at the time of the appeal, unless doing so would interfere with a vested right." *Armstead*, 171 Ill. 2d at 290. Thus, each of these statements appears to be a generally applicable canon of statutory construction for courts to follow when determining whether an amended statute will be applied on appeal. On their face, the canon in *Digirolamo* favors prospective application whereas the canon in *Armstead* favors retroactive application.

Although these canons are opposed on their face, there is no conflict between the *holdings* of *Digirolamo* and *Armstead*. Each decision relied on a line of case law that supported its outcome and that followed its pertinent canon of statutory construction. The United States Supreme Court recently observed, "It is not uncommon to find 'apparent tension' between different canons of statutory construction. As Professor Llewellyn famously illustrated, many of the traditional canons have equal opposites." *Landgraf v. USI Film Products*, 511 U.S. 244, 263, 128 L. Ed. 2d 229, 251, 114 S. Ct. 1483, 1496 (1994). Therefore, "another canon of unquestionable vitality" useful to remember when faced with this scenario is "the 'maxim *** that general expressions, in every opinion, are to be taken in connection with the case in which

those expressions are used.' " *Landgraf*, 511 U.S. at 265, 128 L. Ed. 2d at 252, 114 S. Ct. at 1497, quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399, 5 L. Ed. 257, 290 (1821).

As discussed above, the present appeal is analogous to *Digirolamo*. Both this case and *Digirolamo* involved statutory amendments to a criminal statute and potential *ex post facto* violations. *Armstead*, on the other hand, is not applicable to this appeal. Unlike the present case, *Armstead* concerned a statutory amendment to a civil statute that possibly implicated rights vested under our due process clause (*Armstead*, 171 Ill. 2d 282). See *Weaver v. Graham*, 450 U.S. 24, 29-30, 67 L. Ed. 2d 17, 23-24, 101 S. Ct. 960, 964-65 (1981) (explaining that, in addressing whether application of a statutory amendment would violate *ex post facto* principles, it is *not relevant* whether the statutory change touches on any vested right).

Nevertheless, given the confusion that has resulted from the two canons, I take this opportunity to explain the legal history behind the canons. I then propose that this court adopt a new test for determining when a new or amended statute will be applied on appeal to pending cases. In *Landgraf v. USI Film Products*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994), the United States Supreme Court similarly was faced with seemingly contradictory canons of statutory construction for determining when a new federal statute will be applied on appeal to pending cases. The Supreme Court successfully reconciled the principles underlying the two canons into a single test. We should do likewise here.

### III. Historical Presumption Against the Retroactive Application of Statutes

Historically, there has been a presumption against the retroactive application of statutes. Both this court and the United States Supreme Court have discussed this presumption.

This court has reviewed the origin and rationale of the presumption as follows.

"As a general matter it is clear that prospective application of statutes is to be preferred to retroactive, or retrospective, application. This preference has existed from time out of mind. 'The doctrine that legislation must be prospective in character is traceable to Coke and Bracton, who recognized it as a rule of construction founded on doctrines of natural law, and it was incorporated into American jurisprudence by the learned jurists Kent and Story.' (*Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 346.) The doctrine has sometimes been treated as a constitutional restraint on legislation, and sometimes as a rule of statutory construction. [Citations.]

The preference for prospectivity is founded upon:
'[the] fundamental principle of jurisprudence that retroactive application of new laws is usually unfair. There is a general consensus that notice or warning of the rule should be given in advance of the actions whose effects are to be judged \*\*\*. \*\*\*' 1A A. Sutherland, Statutory Construction § 41.02, at 340-41 (4th ed. 1986).

It has thus been our general rule of construction that an amendatory act will be construed as prospective. [Citations.] \*\*\*

\*\*\* Since no statute will violate the Constitution merely because it operates prospectively, prospectivity is to be preferred." *Rivard v. Chicago Fire Fighters Union, Local No. 2*, 122 Ill. 2d 303, 308-09 (1988).

The United States Supreme Court has also explained the basis for its traditional presumption against the retroactive application of statutes. "The presumption against the retroactive application of new laws is an essential thread in the mantle of protection that the law affords the individual citizen. That presumption 'is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.' [Citation.]" *Lynce v. Mathis*, 519 U.S. 433, 439, 137 L. Ed. 2d 63, 71, 117 S. Ct. 891, 895 (1997). "Elementary considerations of fairness dictate that individuals should have an op-

portunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf*, 511 U.S. at 265, 128 L. Ed. 2d at 252, 114 S. Ct. at 1497. "This doctrine finds expression in several provisions of our Constitution. The specific prohibition on *ex post facto* laws is only one aspect of the broader constitutional protection against arbitrary changes in the law. In both the civil and the criminal context, the Constitution places limits on the sovereign's ability to use its lawmaking power to modify bargains it has made with its subjects." *Lynce*, 519 U.S. at 439-40, 137 L. Ed. 2d at 71, 117 S. Ct. at 895.

The Supreme Court has elaborated on the various federal constitutional provisions that possibly may be violated by a retroactive application of new statutes.

" 'The *Ex Post Facto* Clause flatly prohibits retroactive application of penal legislation. Article I, § 10, cl. 1, prohibits States from passing another type of retroactive legislation, laws 'impairing the Obligation of Contracts.' The Fifth Amendment's Takings Clause prevents the Legislature (and other government actors) from depriving private persons of vested property rights except for a 'public use' and upon payment of 'just compensation.' The prohibitions on 'Bills of Attainder' in Art. I, §§ 9-10, prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct. [Citation.] The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation ... .' [Citation.]" *Lynce*, 519 U.S. at 440 n.12, 137 L. Ed. 2d at 71 n.12, 117 S. Ct. at 895 n.12, quoting *Landgraf*, 511 U.S. at 266, 128 L. Ed. 2d at 253, 114 S. Ct. at 1497.

The above list of potential constitutional problems is not exhaustive. For example, both this court and the Supreme Court have concluded that retroactive application of a statute may violate the constitutional principle of separation of powers. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 131 L. Ed. 2d 328, 115 S. Ct. 1447 (1995); *In re Marriage of Cohn*, 93 Ill. 2d 190, 203-04 (1982).

As the foregoing discussion shows, a general presumption against the retroactive application of statutes is deeply embedded in our legal history. This presumption initially was rooted in fairness and freedom from arbitrary governmental actions. Later, this presumption was expressed in various constitutional provisions. Consequently, applying statutes prospectively has been the preferred practice because it avoids the myriad constitutional problems that may arise from applying a statute retroactively.

### IV. Historical Exceptions to the Presumption Against the Retroactivity of Statutes

For nearly as long as the general presumption against the retroactive application of statutes has existed, jurists have also recognized that the retroactive application of a statute is desirable in certain situations. Hence, legal history records the development of a number of exceptions to the general presumption against retroactivity. The following discussion demonstrates that certain exceptions have long existed to the general presumption against the retroactive application of statutes. This list is intended to be illustrative, not exhaustive.

Illinois has, for example, long recognized the exception that a new or amended statute may be applied retroactively on appeal where the legislature intended a retroactive application of the statute and the statute affects only procedure or remedies. See, *e.g.*, *People v. Digirolamo*, 179 Ill. 2d 24, 50 (1997); *Rivard v. Chicago Fire Fighters Union, Local No. 2*, 122 Ill. 2d 303, 310 (1988); *Orlicki v. McCarthy*, 4 Ill. 2d 342, 346 (1954); *Theodosis v. Keeshin Motor Express Co.*, 341 Ill. App. 8 (1950); see also *In re Pronger*, 118 Ill. 2d 512, 522 (1987) (noting that our General Assembly incorporated part of this exception into the Illinois Statute on Statutes), quoting *Orlicki*, 4 Ill. 2d at 346, quoting Ill. Rev. Stat. 1953, ch. 131, par. 4. This court's decision in *Digirolamo* illustrates

the application of this exception. The United States Supreme Court continues to recognize a principle that is similar in application. See *Landgraf*, 511 U.S. at 273-74, 275, 128 L. Ed. 2d at 257, 258, 114 S. Ct. at 1501, 1502 (allowing statutory changes in procedure or in prospective relief to be applied on appeal, but characterizing those changes as not truly retroactive in effect).

Another exception found in Illinois law is that a statutory amendment may be applied "retroactively" where the legislature enacted the amendment merely to clarify an existing law that was ambiguous, rather than to change the law. *In re Marriage of Cohn*, 93 Ill. 2d 190, 202 (1982); see, *e.g.*, *Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 461-63 (1995); *People v. Rink*, 97 Ill. 2d 533, 540-41 (1983); *People ex rel. Spitzer v. County of La Salle*, 20 Ill. 2d 18, 28 (1960). Like the exception discussed above, this exception gives effect to the legislature's intent in drafting the statute.

A third exception long recognized in Illinois law concerns "nonvested rights." This exception is best understood by discussing its origin. Justice Story, the same learned jurist who has been credited with incorporating into American jurisprudence the general presumption against the retroactive application of statutes, in 1814, wrote *Society for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756 (C.C. N.H. 1814) (No. 13,156). There, sitting on circuit, Justice Story was construing a provision of the New Hampshire Constitution that broadly prohibited all "retrospective" laws. In doing so, he offered what today remains the basic definition of a statutory law that is operating with truly retroactive effect. "Justice Story first rejected the notion that the provision bars only explicitly retroactive legislation, *i.e.*, 'statutes ... enacted to take effect from a time anterior to their passage.' [Citation.] Such a construction, he concluded, would be 'utterly subversive of all the objects'

of the prohibition. [Citation.] Instead, the ban on retrospective legislation embraced 'all statutes, which, though operating only from their passage, affect vested rights and past transactions.' [Citations.]" *Landgraf*, 511 U.S. at 268-69, 128 L. Ed. 2d at 254, 14 S. Ct. at 1498-99. Justice Story elaborated:

> "Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past, must be deemed retrospective." *Society for the Propagation of the Gospel*, 22 F. Cas. at 767.

Both this court and the Supreme Court have long utilized Justice Story's definition of what constitutes a retroactive law. See, *e.g.*, *Landgraf*, 511 U.S. at 268-70, 128 L. Ed. 2d at 254-55, 114 S. Ct. at 1498-99; *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 290 (1996) (and cases cited therein); *Theodosis v. Keeshin Motor Express Co.*, 341 Ill. App. 8 (1950). Unlike New Hampshire, Illinois has never had an express constitutional prohibition of retrospective laws. See *Theodosis*, 341 Ill. App. at 12. Nonetheless, our legislature in 1874 set forth a general presumption against statutory retroactivity in our Statute on Statutes (*Orlicki v. McCarthy*, 4 Ill. 2d 342, 346 (1954), quoting Ill. Rev. Stat. 1953, ch. 131, par. 4), which still appears on the books today (see 5 ILCS 70/4 (West 1998)). In the same manner that Justice Story limited the reach of New Hampshire's constitutional prohibition of "retrospective" laws to only those laws with truly retroactive effect, this court has limited the reach of Illinois' statutory presumption against retroactive laws to only those laws with truly retroactive effect. This court did this by creating a broad exception to the Statute on Statute's presumption against statutory retroactivity for "nonvested rights." See *Orlicki*, 4 Ill. 2d at 346-48.

This "nonvested rights" exception to the general presumption against the retroactive application of

statutes remains in Illinois, though, over time, it came to be treated in a line of cases as its own general rule. See *Armstead*, 171 Ill. 2d at 289-90 (and cases cited therein). Stated as a general rule, or canon, this exception came to provide that "a reviewing court should *** apply the law as it exists at the time of the appeal, unless doing so would interfere with a vested right." *Armstead*, 171 Ill. 2d at 290. *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282 (1996), typifies application of this third exception. In *Armstead*, this court was presented with an issue of whether an amendment to a statute would apply in that appeal. Plaintiff wanted to register its underground storage tanks pursuant to the Gasoline Storage Act (Act) (430 ILCS 15/0.01 *et seq.* (West 1992)) so that it would qualify for monies for cleanup. The Act was amended during the appeal. The amendment expressly stated that underground storage tanks taken out of operation before January 2, 1974, could not be registered. It was undisputed that plaintiff's tanks were taken out of operation before that date and, thus, could not be registered if the new amendment applied. *Armstead*, 171 Ill. 2d at 284-87. The amendment implicated plaintiff's due process rights.

In determining whether the amendment would be applied on appeal to the parties' existing controversy, this court in *Armstead* defined retroactivity in words nearly identical to those used by Justice Story nearly two centuries before:

> "The application of an amendment to an existing controversy does not necessarily constitute retroactivity. '[I]t is well settled that a statute is not retroactive just because it relates to antecedent events, or because it draws upon antecedent facts for its operation.' [Citation.] Instead, this court has defined a retroactive change in the law as ' "one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past." ' [Citation.]" *Armstead*, 171 Ill. 2d at 289-90.

The *Armstead* opinion further stated:

> "With this understanding of retroactivity, there is little reason to focus on legislative intent. The legislature is without constitutional authority to enact a law that is truly retroactive, in that it impairs vested rights, even if that is its expressed intention. [Citation.] Moreover, where an amendment has no such retroactive impact, there is simply no need to apply further rules of construction to determine legislative intent because the amendment by definition has only prospective application. Thus, a reviewing court should simply apply the law as it exists at the time of the appeal, unless doing so would interfere with a vested right." *Armstead*, 171 Ill. 2d at 290.

The opinion determined that plaintiff did not have a vested right to register its underground storage tanks under the preamended Act. Since no vested right was at issue, the opinion held that the amended Act would be applied to the appeal. Under the amended Act, plaintiff did not have the right to register its tanks. *Armstead*, 171 Ill. 2d at 290-93.

In reviewing past decisions regarding when a statutory amendment would be applied to an existing controversy on appeal, the opinion stated that the jurisprudence was not consistent. Sometimes this court would apply a "legislative intent approach" to the question, and at other times would apply a "vested rights approach" to the question. Under the vested rights approach, this court did not look at legislative intent. Rather, this court simply applied the law as it exists at the time of the appeal, unless doing so would interfere with a vested right. The opinion defined a "vested right" as an interest that is protected from interference by our due process clause. The opinion then described the vested rights approach as "the better approach." *Armstead*, 171 Ill. 2d at 289.

There is no doubt that *Armstead* correctly held that the amended Gasoline Storage Act applied in that appeal. Some jurists, however, have understood the lan-

guage in *Armstead* as suggesting a categorical presumption in favor of application of *all* new rules of law, with the sole exception being that "unless doing so would interfere with a vested right" (*Armstead*, 171 Ill. 2d at 290). In my view, *Armstead* was never intended as having a universal application. Rather, *Armstead* was meant to apply only to those cases raising due process concerns. See *Armstead*, 171 Ill. 2d at 289 (defining "vested right" as an interest that is protected by our due process clause).

It is true, as *Armstead* intimated, that the legislature lacks the authority to enact a retrospective statute in violation of our due process clause. This truth, though, was never intended to be extended to mean that *all* other new statutes (*i.e.*, those that do not violate the due process clause if applied retroactively) shall be applied on appeal, regardless of legislative intent. Such an understanding of *Armstead* would turn the general presumption against the retroactivity of statutes on its head. It would fail to account for the myriad constitutional problems other than due process that may arise from applying a statute retroactively. Finally, it would conflict with the primary rule of statutory construction that, in interpreting a statute, courts are to ascertain and give effect to the intent of the legislature. See, *e.g.*, *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990).

### V. Adoption of New Test

The United States Supreme Court recently set forth the following test for determining when a new federal statute will be applied on appeal to pending cases.

"When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party

possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern ***.'' *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505.

See also *Martin v. Hadix*, 527 U.S. 343, 352, 144 L. Ed. 2d 347, 356-57, 119 S. Ct. 1998, 2003 (1999) (restating the same test).

In the above test, the Supreme Court has successfully harmonized the legislative intent approach with Justice Story's definition of a truly retroactive law. First, the test reconfirms the "traditional rule" that "new statutes do *not* apply retroactively *unless* Congress expressly states that they do." (Emphasis in original.) *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 237, 131 L. Ed. 2d 328, 354, 115 S. Ct. 1447, 1461-62 (1995). In reaffirming this principle for the modern era, the Court explained:

"The presumption against statutory retroactivity had special force in the era in which courts tended to view legislative interference with property and contract rights circumspectly. In this century, legislation has come to supply the dominant means of legal ordering, and circumspection has given way to greater deference to legislative judgments. [Citations.] But while the *constitutional* impediments to retroactive civil legislation are now modest, prospectivity remains the appropriate default rule. Because it accords with widely held intuitions about how statutes ordinarily operate, a presumption against retroactivity will generally coincide with legislative and public expectations. Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Such a requirement allocates to Congress responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against

which to legislate." (Emphasis in original.) *Landgraf*, 511 U.S. at 272-73, 128 L. Ed. 2d at 256-57, 114 S. Ct. at 1500-01.

Second, the test also continues to adhere to Justice Story's definition of a retroactive law. The Court explained, *"Even absent specific legislative authorization,* application of new statutes passed after the events in suit is unquestionably proper in many situations." (Emphasis added.) *Landgraf*, 511 U.S. at 273, 128 L. Ed. 2d at 257, 114 S. Ct. at 1501. This means that, where the legislature is silent as to the temporal reach of a statute, a court must proceed to a determination of whether application of the new statute would have a truly retroactive effect. If there is no truly retroactive effect, then application of the new statute on appeal is proper. *Landgraf*, 511 U.S. at 273-74, 275, 128 L. Ed. 2d at 257, 258, 114 S. Ct. at 1501, 1502. As examples of statutory changes that have no truly retroactive effect, the Court mentioned those changes concerning prospective relief and many, but not all, changes to procedural rules. *Landgraf*, 511 U.S. at 273-74, 275 & n.29, 128 L. Ed. 2d at 257, 258 & n.29, 114 S. Ct. at 1501, 1502 & n.29.

The Court elaborated further on the subject of retroactivity:

"A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment [citation] or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test for retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which

judges tend to have 'sound ... instinct[s],' [citation] and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." *Landgraf*, 511 U.S. at 269-70, 128 L. Ed. 2d at 254-55, 114 S. Ct. at 1499.

This court should adopt the Supreme Court's test for determining when a new or amended statute will be applied on appeal to pending cases. Applying that test to the present case yields the following analysis. First, we must determine whether the General Assembly has expressly prescribed the statute's proper reach; if the General Assembly has done so, there is no need to resort to judicial default rules. See *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505. Here, with respect to the insanity provisions at bar, the General Assembly expressly prescribed that they were to take effect over six months after the effective date of the enactment, *i.e.*, on January 1, 1999. See Pub. Act 90—593, § 99 (eff. June 19, 1998). Because the General Assembly was clear that it did not intend for a retroactive application of these amendments to the insanity defense statute, our inquiry ends. These amendments, therefore, shall not be applied on retrial.

For the above reasons, I agree that defendant is entitled to a new trial in which he must be permitted to assert an insanity defense in accordance with the insanity defense statute as it existed before Public Act 89—404. I would not reach the *ex post facto* issue.

JUSTICE FREEMAN, also specially concurring:

I agree with the court that defendant is entitled to a new trial. I also agree that on retrial any insanity defense raised by defendant must be done so in accordance with section 6—2 of the Criminal Code of 1961 as it existed prior to the amendments contained in Public Act 89—404. I do so, however, for reasons other than those stated in today's opinion.

The record reveals that defendant sought to refute the State's murder charges by asserting the affirmative defense of insanity, *i.e.*, he was not guilty because he was insane at the time of the crimes. At trial, defendant challenged the constitutionality of Public Act 89—404 in its entirety by claiming that the Act had been passed in violation of the single subject rule contained in our state constitution. See Ill. Const. 1970, art. IV, § 8(d). Defendant's motive in challenging the Act is not difficult to discern—section 15 of Public Act 89—404 amended the Illinois insanity provision to make it more difficult for criminal defendants to establish the defense. Specifically, the amendment (i) disallowed a claim of insanity premised on the defendant's inability to conform conduct to the requirements of the law, and (ii) increased the defendant's burden of proof from a preponderance of the evidence to clear and convincing evidence. Thus, if Public Act 89—404 were to be declared unconstitutional on single subject grounds, the law would be void, and the changes it wrought to the insanity statute would not apply to defendant. In essence, defendant argued that because the Act was a nullity by virtue of its unconstitutional passage, he should be tried under the former version of the law with its broader definition of insanity and its less stringent burden of proof. The circuit court rejected defendant's single subject rule challenge, and eventually the jury rejected defendant's claim that he was insane.

On appeal, defendant raises a number of issues that he believes mandate the reversal of his convictions. First among these is his renewal of his single subject rule challenge to Public Act 89—404. In fact, as originally briefed by the parties, the issue was simply whether Public Act 89—404 was enacted in contravention of the single subject rule. Defendant argued in his brief that the rule was violated because the Act contains discordant provi-

sions that have no legitimate relation to each other. The State, in its brief, responded that all of the measures within the Act are legitimately interrelated because each of the sections addresses governmental matters that fall under the purview of the various county State's Attorneys. If this court were to find that the Act violated the single subject rule, the State alternatively asked that this court hold that the Act's subsequent codification served to close the window of time within which single subject rule challenges can be made. In other words, the State invited this court to adopt the so-called "codification rule," a rule adopted by the judiciary in some states where the state constitution requires that legislation relate to a single subject.

On January 22, 1999, while this case was pending, we issued our opinion in *People v. Reedy*, 186 Ill. 2d 1 (1999). *Reedy* presented this court with the very same arguments *vis à vis* Public Act 89—404 and the single subject rule. After considering those arguments, we declared Public Act 89—404 unconstitutional on the ground that it was passed in violation of the single subject rule. *Reedy*, 186 Ill. 2d at 11-12 (rejecting notion that single subject rule met where all sections related to matters within control of county State's Attorneys). Moreover, we refused to adopt the "codification rule." See *Reedy*, 186 Ill. 2d at 12-13 (declining to adopt codification rule).

In light of *Reedy*, Public Act 89—404 is invalid. This means, as the court today correctly observes, that it is as " ' "though no such law had ever been passed." ' " 192 Ill. 2d at 156, quoting *People v. Gersch*, 135 Ill. 2d 384, 399 (1990), quoting *People v. Schraeberg*, 347 Ill. 392, 394 (1932). Defendant's trial was conducted in accordance with the changes to the insanity defense contained in Public Act 89—404 because those provisions were in effect at the time defendant allegedly committed the

crimes in question.[2] We now know, however, that those provisions were enacted in contravention of our state constitution. Due to the constitutional infirmity, we must act as though those provisions had never been passed. Based on these principles, we must conclude that the insanity defense provisions applicable in the present case are not the more stringent amendments of Public Act 89—404, but the more lenient provisions of the Criminal Code of 1961. Compare 720 ILCS 5/6—2 (West 1996) with 720 ILCS 5/6—2 (West 1992). Thus, defendant, as it turns out, was correct all along when he argued to the trial judge that the "tougher" insanity provisions should not have been used due to the single subject violation.

Our decision in *Reedy*, however, was not the only event that occurred during the pendency of this appeal. A new wrinkle developed when our General Assembly sought to reenact the amendments to the insanity defense statute that were contained in Public Act 89—404. This legislative action took place on June 19, 1998, well after defendant had filed his opening brief in this court on April 3, 1998. Although the State filed its responding brief on October 30, 1998, and defendant filed a reply brief on December 14, 1998, none of these briefs that post-dated the passage of the new legislation, Public Act 90—593, mentioned the General Assembly's action. As a result, this court on its own motion ordered the parties to file supplemental briefs. Specifically, our order, entered October 21, 1999, directed the parties to address "whether Public Act 90—593 applies retroactively to appellant and, if so, whether retroactive application of Public Act 90—593 would violate the constitutional prohibition against *ex post facto* application of the law."

In response to our query, the State asserted that because Public Act 89—404 was void at the time of trial,

---

[2]Public Act 89—404 went into effect on August 20, 1995, and the crimes at issue here occurred in July 1996.

the changes it wrought to the insanity statute were inapplicable to defendant. Moreover, the State conceded that the application of the newly enacted Public Act 90—593 "to any retrial of Defendant on the same charges would violate *ex post facto* principles." The defendant agreed with the State, but posited that the constitutional *ex post facto* question need not be addressed because Public Act 90—593 cannot be given a retroactive application. Defendant maintained that the statute does not contain language, express or implied, indicative of anything other than a legislative intent for forward application of the amendments. He pointed out that section 99 of Public Act 90—593 provides that "[t]his Act takes effect upon becoming law [June 19, 1998], except that the amendatory changes to Sec. 18—5 of the Criminal Code of 1961 take effect January 1, 1999." Pub. Act 90—593, § 99 (eff. June 19, 1998). The excepted "amendatory changes" referred to in section 99 are the insanity defense provisions at issue in this case.

In light of the above, the question we must resolve now is which insanity provisions will apply at defendant's retrial. Our task has been made easier because the State and the defendant both agree that the law as it existed prior to the enactment of Public Act 89—404 applies. Despite the agreement of the parties, the court today nevertheless undertakes an *ex post facto* analysis and concludes that the *ex post facto* clause prohibits application of the amendments to defendant on retrial. As an initial matter, I question whether, in view of the fact that neither party argues that the provisions are to be applied on retrial, the court's discussion is warranted. In other words, should this court decide the constitutional issue in the absence of a legal question disputed by the parties? Notwithstanding the apparent absence of a legally disputed issue in this case, the court reaches and considers the constitutional *ex post facto* question without first

determining whether the amendments at issue even apply to conduct occurring before their enactment. Stated differently, if the amendments do not apply to the events in question in the first instance, then, necessarily, no *ex post facto* problem would exist in this case. Thus, if the court wishes to consider the matter further (despite the State's concession), then the court's initial consideration should rest upon the temporal reach of the amendments of question, which is a question of statutory retroactivity.

As I noted several months ago in my special concurrence in *Premier Property Management, Inc. v. Chavez*, 191 Ill. 2d 101, 116-17 (2000) (Freeman, J., specially concurring, joined by McMorrow, J.), however, our case law on the issue of statutory retroactivity is unclear. This is so because one line of cases in our jurisprudence espouses a "vested rights" approach while another line of cases embraces a "legislative intent" approach to the same question. Compare *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282 (1996), with *People v. Digirolamo*, 179 Ill. 2d 24 (1997); see also *Premier*, 191 Ill. 2d at 115-17 (Freeman, J., specially concurring, joined by McMorrow, J.) (discussing cases). One could argue that the conflict between *Armstead* and *Digirolamo* is reason enough for this court to address the retroactivity issue in this case even in the face of the concession made by the State. I have previously pointed out the dichotomy between *Armstead* and *Digirolamo* and have noted that other courts and jurists have commented upon it as well. *Premier*, 191 Ill. 2d at 117-18 (Freeman, J., specially concurring, joined by McMorrow, J.), citing *White v. Sunrise Healthcare Corp.*, 295 Ill. App. 3d 296, 299 (1998); *Kopec v. City of Elmhurst*, 193 F.3d 894, 906 (7th Cir. 1999) (Posner, C.J., dissenting). To resolve the conflict, I suggested in *Premier* that this court follow the lead of the United States Supreme Court in this area because that Court had addressed a similar conflict

within its own jurisprudence. See *Premier*, 191 Ill. 2d at 120 (Freeman, J., specially concurring, joined by McMorrow, J.), quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 128 L. Ed. 2d 229, 261-62, 114 S. Ct. 1483, 1505 (1994).[3] I continue to believe that our adoption of the federal principles would go a long way in settling the question of which rule will apply in the face of legislative silence on the issue. The federal rule looks first to the language of the statute to determine whether the legislative branch has defined the statute's temporal reach. If it has, the court's inquiry ends. *Premier*, 191 Ill. 2d at 121 (Freeman, J., specially concurring, joined by McMorrow, J.). As I stated in *Premier*, the presumption against statutory retroactivity discussed in *Landgraf* has no force in cases where the legislature's intent is clear. See *Premier*, 191 Ill. 2d at 121 (Freeman, J., concurring, joined by McMorrow, J.). In the absence of any express indication as to the statute's proper reach, *Landgraf* directs a court to resort to a series of judicial default rules to determine whether the new provision should have retroactive effect. See *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 262, 114 S. Ct. at 1505. ("[I]f the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result").

I strongly believe that the need for guidance from this court is manifold and goes beyond mere confusion in our lower courts. I note that prior to the United States Supreme Court's issuance of *Landgraf*, one of the federal courts of appeal pointed out that the federal judiciary's lack of a clear, definitive retroactivity rule provided incentive for Congress to avoid explicitly addressing whether a new statute will have prospective or retroactive effect.

---

[3]This is the same test cited with approval by Justice Bilandic in his separate opinion. See 192 Ill. 2d at 172-73 (Bilandic, J., specially concurring).

See *Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225, 227 (7th Cir. 1992) (noting that when Congress could not agree on retroactivity, it "dumped the question into the judiciary's lap without guidance," a "politically convenient solution" "facilitated by the fact that the courts do not have a consistent rule for deciding [retroactivity]" thereby allowing "[e]ither of the contending factions in Congress" to "hope that statutory silence would work in its favor"). Two years later, the Supreme Court provided the needed definitiveness in *Landgraf* when it reaffirmed the traditional presumption in favor of prospectivity. It is my hope that this court will soon do likewise.

In addition, by failing to clarify which analysis is to be utilized in the face of legislative silence on the temporal operation of a statute, *i.e.*, *Armstead*'s vested rights analysis or *Digirolamo*'s legislative intent approach, this court runs the risk of blurring the line between vested rights concerns and *ex post facto* concerns, a point on which the United States Supreme Court has specifically warned state courts against. The Court spoke to this problem at length in *Weaver v. Graham*, 450 U.S. 24, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981). At issue in that case was whether a Florida statute that reduced the amount of "gain time" to be deducted from a convicted prisoner's sentence was unconstitutional as applied to those prisoners whose crimes were committed before the statute's enactment. The Florida Supreme Court had previously held that the statute could be given a retroactive application because the " 'gain time' " allowance was " 'an act of grace rather than a vested right and may be withdrawn, modified, or denied.' " *Weaver*, 450 U.S. at 28, 67 L. Ed. 2d at 22, 101 S. Ct. at 963, quoting *Harris v. Wainwright*, 376 So. 2d 855, 856 (Fla. 1979). In reversing the Florida Supreme Court, the Court noted the following:

"In using the concept of vested rights [citation], the Florida court apparently drew on the test for evaluating

retrospective laws in a civil context. See 2 C. Sands, Sutherland on Statutory Construction § 41.06 (4th ed. 1973); Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 696 (1960); Smead, The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence, 20 Minn. L. Rev. 775, 782 (1936). *Discussion of vested rights has seldom appeared in ex post facto analysis, as in identifying whether the challenged change is substantive rather than procedural.* [Citation.] *When a court engages in ex post facto analysis, which is concerned solely with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred, it is irrelevant whether the statutory change touches any vested rights. Several state courts have properly distinguished vested rights from ex post facto concerns.* [Citations.]." (Emphasis added.) *Weaver,* 450 U.S. at 29 n.13, 67 L. Ed. 2d at 23 n.13, 101 S. Ct. at 964 n.13.

The Court stated that, in contrast to the Florida Supreme Court's reasoning, "a law need not impair a 'vested right' to violate the *ex post facto* prohibition." *Weaver,* 450 U.S. at 29, 67 L. Ed. 2d at 23, 101 S. Ct. at 964. The court explained this at length:

"Evaluating whether a right has vested is important for claims under the Contracts or Due Process Clauses, which solely protect pre-existing entitlements. [Citations.] The presence or absence of an affirmative, enforceable right is not relevant, however, to the *ex post facto* prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." *Weaver,* 450 U.S. at 29-31, 67 L. Ed. 2d at 23-24, 101 S. Ct. at 964-65.

Weaver thus demonstrates that a judicial default rule premised solely on vested rights will not always ensure against an *ex post facto* violation. This case then, like *Premier* before it, presents us with the opportunity to bring needed clarity to this area of the law. The court, as it did in *Premier*, unfortunately lets this chance pass.

As *Landgraf* makes clear, when the question of a statute's temporal reach is at issue, the court must begin with the language contained in the statute. Likewise, in this case, the language of Public Act 90—593 is important. This is particularly true in criminal cases because section 4 of the construction of statutes act (5 ILCS 70/4 (West 1998)) states that the law which was in effect at the time of the commission of an offense is controlling in a criminal proceeding. Thus, we should first look to the language of Public Act 90—593 in order to ascertain whether the legislature explicitly indicated that such was not to be the case. Public Act 90—593 does not contain any express statement that the General Assembly intended for the act to have retroactive operation. Indeed, a reading of the entire Act compels the opposite conclusion. First of all, when the General Assembly wanted a specific provision of Public Act 90—593 to apply to cases pending on the effective date of the enactment, the General Assembly specifically so stated. See, *e.g.*, Pub. Act 90—593, § 45 (eff. June 19, 1998). This occurred in only one instance throughout the entire Act. Moreover, with respect to the insanity provisions at issue in this case, the General Assembly explicitly stated that these were to take effect six months *after* the effective date of the enactment. Courts have held that the legislature's postponement of an effective date is direct evidence that a retroactive application was not intended. See, *e.g.*, *United States v. Brebner*, 951 F.2d 1017, 1022-23 (9th Cir. 1991) (noting that congressional intent against retroactivity was manifested by its express delaying of the effec-

tive date for six months); *Ocean & Atmospheric Science, Inc. v. Smyth Van Line, Inc.*, 446 F. Supp. 1158, 1159 (S.D.N.Y. 1978); *Twiss v. State Department of Treasury*, 124 N.J. 461, 468, 591 A.2d 913, 916 (1991); *Jordan v. Westhill Central School District*, 42 A.D.2d 1043, 348 N.Y.S.2d 620 (1973); see also 2 N. Singer, Sutherland on Statutory Construction § 41.04, at 352 (5th ed. 1993). Given the lack of language expressly indicating that the insanity provisions were to apply retroactively, along with the explicit statement that the effective date of those provisions was to be postponed, it seems clear that the legislature did not intend the insanity provision to apply retroactively to crimes occurring before the effective date. In other words, the plain language of the statute cannot be construed to have anything other than a prospective operation, which thereby precludes any possible *ex post facto* problem in this case.

As the foregoing demonstrates, the language of Public Act 90—593 speaks definitively to the temporal reach of the Act. But let us suppose that Public Act 90—593 lacked such a statement. In other words, would the same result (prospective application of the insanity provisions) obtain if the legislature had been silent on the question? I believe it would. If the legislature had been silent on the question, the traditional rule of prospectivity, discussed in *Landgraf*, would operate because the changes to the insanity defense statute are more than just procedural in nature. Given this fact, I would not construe the statute to have retroactive reach absent a clear expression from the legislature that such an operation was in fact intended. I would reach this result based on the following observations.

As one commentator has explained, absent constitutional restriction, "there is no question of the legislature's general power to enact laws which operate retrospectively or retroactively." N. Singer, Sutherland

on Statutory Construction § 41.04, at 350 (5th ed. 1993).[4] Courts have generally applied strict construction to prevent retroactive operation in order to ensure that the statute would not violate constitutional prohibitions. As explained in Sutherland: "The principal explanation offered by courts is that the statute must be construed to sustain its constitutionality and thus prospective operation will be presumed where a retroactive operation would produce invalidity." 2 N. Singer, Sutherland on Statutory Construction § 41.04, at 350 (5th ed. 1993). To this end, the following principles have been recognized by the judiciary:

"Where a statute affects inchoate rights or is remedial in nature, it will be construed retroactively if the legislative intent clearly indicates that retroactive operation is intended. A remedial statute that does not take away vested rights can operate retroactively in the absence of language manifesting a contrary intent. Likewise, where a new statute deals only with procedure, prima facie it applies to all actions—to those which have accrued or are pending and to future actions. It has been held that there is a presumption that procedural statutes apply retroactively. But steps already taken, including pleadings, and all things done under the old law continue effective, unless an intent to the contrary is plainly manifested. Absent a clearly expressed legislative purpose to the contrary, pending cases are only affected in relation to future proceedings from the point reached when the new law becomes operative." 2 N. Singer, Sutherland on Statutory Construction § 41.04, at 351 (5th ed. 1993).

----

[4]For example, in this case, had the legislature stated explicitly that the amendments in question were to be applied to conduct occurring before the Act's passage, this court would have been duty-bound to give effect to that intent to the extent that the Constitution does not bar such an application. In such a case, the constitutional *ex post facto* issue could not be avoided. In other words, the case would have presented the court with a straightforward *ex post facto* question. As the case currently stands, the question is one of statutory construction.

Courts, therefore, will allow a retroactive law if such a law does not contravene a preexisting contractual right or a vested right enjoyed by the parties. See *Landgraf*, 511 U.S. at 273-75, 128 L. Ed. 2d at 257-58, 114 S. Ct. at 1501-02 (giving examples of types of laws that can be applied to conduct occurring before enactment).

As illustrated above, in civil cases, the only bar to retroactive legislation is whether the change in law impairs preexisting contractual rights or impairs vested rights protected from state interference by the due process clause. In the criminal context, however, the focus on vested rights does not always prevent an *ex post facto* problem because, as mentioned previously, the United States Supreme Court has warned that "a law need not impair a 'vested right' to violate the *ex post facto* prohibition." *Weaver v. Graham*, 450 U.S. 24, 29, 67 L. Ed. 2d 17, 23, 101 S. Ct. 960, 964 (1981). The Court has defined an *ex post facto* law as one that "must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver*, 450 U.S. at 29, 67 L. Ed. 2d at 23, 101 S. Ct. at 964. In a thoughtful analysis, the Supreme Court of California explained the concerns that arise in this area:

> "Beyond [the *Weaver ex post facto* definition], the picture is much less clear. To begin with no guidance can be found in the concept of vested rights ***. *Somewhat more helpful is the procedural-substantive distinction, but even that traditional tool must be used with great care in [the ex post facto context]:* 'Changes which may be designated as procedural do not, as a rule come within the ex post facto doctrine, but that in itself is not the true test.' [Citations.] Likewise, the United States Supreme Court recently reiterated in *Weaver* that 'no *ex post facto* violation occurs if the change effected is merely procedural' [citation], but immediately qualified the rule by the caveat that 'Alteration of a substantial right, however, is not merely procedural, even if the statute takes a seemingly procedural form.' [Citation.] This is because 'it is the effect, not the form, of

the law that determines whether it is *ex post facto.*' [Citation.] Yet the high court did not undertake to define what is a 'substantial right' for this purpose, less still to prepare an inclusive list of such rights." (Emphasis added.) *People v. Smith*, 34 Cal. 3d 251, 259-60, 667 P.2d 149, 153, 193 Cal. Rptr. 692, 696 (1983).

In the footnote which accompanies the last line of the above quotation, the California court noted that "[a] few kinds of statutes, even though procedural in appearance, have consistently been held subject to the ex post facto clause because of their substantial effect on a defendant's rights: e.g., statutes deleting elements of the crime, lowering the prosecution's burden of proof, or impairing a defense." *Smith*, 34 Cal. 3d at 260 n.5, 667 P.2d at 153 n.5, 193 Cal. Rptr. at 696 n.5.

These comments, in my view, demonstrate that caution must be used in criminal cases when courts, in the face of legislative silence on the temporal reach of statute, apply presumptions based on the procedural-substantive distinction. The changes to the insanity defense provisions cannot be considered merely procedural due to the fact that if applied to this defendant they would narrow the definition of insanity and in essence would deprive defendant of an affirmative defense that existed at the time he allegedly committed the offenses in question. Moreover, the amendment raises the quantum of proof required of defendant from the preponderance of the evidence to the more demanding "clear and convincing standard." The recent United States Supreme Court decision in *Carmell v. Texas*, No. 98—7540 (May 1, 2000) demonstrates that the Court has retained the long-held recognition that "a law which changes the rules of evidence by which less or different testimony is sufficient to convict" than was previously required does in fact violate the *ex post facto* clause. See *Collins v. Youngblood*, 497 U.S. 37, 45-46, 111 L. Ed. 2d 30, 41, 110 S. Ct. 2715, 2721 (1990) (citing favorably

*Duncan v. Missouri,* 152 U.S. 377, 38 L. Ed. 485, 14 S. Ct. 570 (1894)). Because I believe that the amendments at issue deal with substantive and not procedural matters, I would presume a prospective application of the amendments in this case had the legislature not expressly indicated the temporal operation of the amendments. To construe Public Act 90—593 in any other way would call the statute's constitutionality into question. I note that one of the cardinal rules of statutory construction is that courts will discard an interpretation which would render a statute unconstitutional. See *People v. Williams,* 119 Ill. 2d 24, 28 (1987). Applying this rule of statutory construction here would therefore require that this court presume a prospective application of the amendment in the face of the legislature's silence on the question.

This case represents the second case in the past six months in which this court has had an opportunity to speak clearly on the issue of statutory retroactivity. Once again, however, a majority has chosen to let the opportunity pass even though several members of the court have broached the topic in separate opinions. It is my hope that a majority of this court will soon confront the issue and resolve the questions that have arisen under our current case law.

JUSTICE McMORROW joins in this special concurrence.