THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WOODROW BROWN, Defendant-Appellant.

First District (3rd Division)   No. 1—03—3078

Opinion filed June 8, 2005.

Michael J. Pelletier and Joshua M. Bernstein, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE KARNEZIS delivered the opinion of the court:

On October 23, 1997, defendant shot Chicago Housing Authority

Officer William Henderson in the face with a .22-caliber rifle at close range, breaking the officer's jaw. At the time of the offense, defendant was 16 years old. Consequently, he was initially the subject of a petition for adjudication of wardship based on the offense (97 JD 13460), but the case was transferred to criminal court on February 4, 1998, pursuant to section 5—4(3.3) of the Juvenile Court Act of 1987 (705 ILCS 405/5—4 (3.3) (West 1996)).

In criminal court, defendant was indicted on two counts of attempted first degree murder, one count of aggravated battery with a firearm and four counts of aggravated battery. On October 7, 1998, defendant entered a negotiated plea of guilty to attempt first degree murder of a peace officer (720 ILCS 5/8—4 (West 1998)). Defendant was sentenced to 28 years' imprisonment. Defendant did not move to withdraw his plea or sentence, nor did he file a direct appeal.

On March 25, 1999, defendant filed a postconviction petition wherein he alleged he received ineffective assistance of counsel because he was "forced" to plead guilty to attempted murder of a peace officer. On April 30, 1999, the trial court summarily dismissed the petition as frivolous and patently without merit. Defendant's late notice of appeal was denied.

On June 17, 2003, defendant filed a second postconviction petition wherein he alleged that "fundamental fairness" required review of his claims that he was transferred to criminal court and sentenced under laws amended by Public Act 88—680 (Pub. Act 88—680, eff. January 1, 1995), which had been declared unconstitutional by the Illinois Supreme Court in *People v. Cervantes*, 189 Ill. 2d 80, 723 N.E.2d 265 (1999). On August 1, 2003, the trial court issued a written order dismissing defendant's successive petition because "[defendant's] sentence was proper under the appropriate statute, he should not be resentenced because the amended statute was held to be void." Without addressing defendant's claims that he had a right to a new transfer hearing and trial, the trial court found the petition to be frivolous and patently without merit.

Defendant now appeals from the trial court's order dismissing his successive postconviction petition. He argues that his conviction should be vacated and the cause remanded for a new transfer hearing because the presumptive transfer provision and sentencing provision effectuated by Public Act 88—680 were declared void in *Cervantes*. We reverse and remand.

## ANALYSIS

Public Act 88—680, commonly referred to as the Safe Neighborhoods Law, became effective on January 1, 1995. Pub. Act 88—680,

eff. January 1, 1995. It created 10 new statutes, amended 55 statues and repealed 1 statute. *Cervantes*, 189 Ill. 2d at 82, 723 N.E.2d at 264. Specifically relevant to this appeal, Public Act 88—680 amended the Juvenile Court Act of 1987 to add the presumptive transfer provision (705 ILCS 405/5—4 (3.3)) and amended section 8—4 of the Criminal Code of 1961 (720 ILCS 5/8—4) (the attempt statute) increasing the sentencing range for attempted first degree murder of a peace officer from 15 to 60 years' imprisonment to 20 to 80 years' imprisonment (720 ILCS 5/8—4). See Pub. Act 88—680, § 35—5, eff. January 1, 1995.

After defendant had been transferred from juvenile court to criminal court and was sentenced in this case under amendments effectuated by Public Act 88—680, Public Act 88—680 was declared unconstitutional by our supreme court in *Cervantes*, 189 Ill. 2d 80. On December 2, 1999, the *Cervantes* court ruled that Public Act 88—680 violated the single subject rule of the Illinois Constitution. Ill. Const. 1970, art. IV, § 8(d) ("Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject"). Accordingly, Public Act 88—680 was determined to be void *ab initio*; the state of the law is as if the act had never been passed. *In re G.O.*, 191 Ill. 2d 37, 43, 727 N.E.2d 1003, 1007 (2000).

■ Defendant has raised three issues in the appeal from the denial of his successive postconviction petition. Petitioner now argues that as a result of the court's holding in *Cervantes*: (1) his transfer hearing is void and must be vacated; (2) his plea is void and must be vacated; and (3) his sentence is void and must be vacated.

Generally, any claim of substantial denial of constitutional rights not raised in an original or amended petition is waived. 725 ILCS 5/122—3 (West 1998). However, a claim that a judgment is void is not subject to waiver and can be raised at any time, either directly or collaterally. *People v. Thompson*, 209 Ill. 2d 19, 27, 805 N.E.2d 1200, 1205 (2004). In *Thompson*, the defendant argued for the first time on appeal from the summary dismissal of his postconviction petition that his extended-term sentence was void. Our supreme court held that because a void judgment could be attacked at any time, the defendant's claim "[did] not depend for its viability on his postconviction petition." *Thompson*, 209 Ill. 2d at 27, 805 N.E.2d at 1205. The court further held that "courts have an independent duty to vacate void orders." *Thompson*, 209 Ill. 2d at 27, 805 N.E.2d at 1205. Courts also have the authority to correct void orders at any time. *People v. Arna*, 168 Ill. 2d 107, 113, 658 N.E.2d 445, 448 (1995).

In support of his argument that his transfer and conviction are void, defendant urges us to follow the holding in *People v. Pena*, 321

Ill. App. 3d 538, 747 N.E.2d 1020 (2001). In *Pena*, the 15-year-old defendant was transferred from juvenile court to criminal court under the presumptive transfer provision pursuant to section 5—4(3.3) of the Juvenile Court Act of 1987 (705 ILCS 405/5—4(3.3) (West 1996)). *Pena*, 321 Ill. App. 3d at 540. This presumptive transfer provision was enacted into law as part of Public Act 88—680, which was declared unconstitutional by *Cervantes* on December 2, 1999. *Pena*, 321 Ill. App. 3d at 540, 747 N.E.2d at 1021. After a bench trial, the defendant was convicted of attempted first degree murder and sentenced to 18 years in prison. *Pena*, 321 Ill. App. 3d at 540, 747 N.E.2d at 1021. On appeal from his conviction, the defendant argued that because Public Act 88—680 was found unconstitutional in its entirety, the presumptive transfer provision under which his case was transferred to criminal court was *void ab initio*. Consequently, the defendant argued that his conviction must be vacated and the cause remanded to juvenile court. *Pena*, 321 Ill. App. 3d at 540, 747 N.E.2d at 1021. The State agreed and the court vacated the defendant's conviction and remanded the cause to juvenile court for a new transfer hearing. *Pena*, 321 Ill. App. 3d at 541-44, 747 N.E.2d at 1023.

The State argues that Pena is inapplicable to the facts of the instant case because *Pena* involved a direct appeal, while this case involves a successive postconviction petition. We reject this argument. As previously discussed, a void judgment can be attacked at any time, either directly or collaterally. *Thompson*, 209 Ill. 2d at 27, 805 N.E.2d at 1205.

We agree with defendant that consistent with the holding in *Pena*, his transfer and plea are void pursuant to *Cervantes*. Because we have a duty to vacate void orders (*Thompson*, 209 Ill. 2d at 27, 805 N.E.2d at 1205; *Arna*, 168 Ill. 2d at 113, 658 N.E.2d at 448), we vacate defendant's conviction and remand for a new transfer hearing.

The only remaining question before us then is what law should be applied at the new transfer hearing. As this is a question of law, our review is *de novo*. *People v. Saunders*, 288 Ill. App. 3d 523, 525, 680 N.E.2d 790, 791 (1997).

Prior to *Cervantes*, but after defendant's transfer hearing, section 5—4(3.3) of the Juvenile Court Act of 1987 was repealed by Public Act 90—590 (Pub. Act 90—590, eff. January 1, 1999). Public Act 90—590, otherwise known as the Juvenile Justice Reform Act, enacted presumptive transfer language (705 ILCS 405/5—805(2) (West 1998)) similar but not identical to the repealed section 5—4(3.3). Defendant contends that on remand, the court should apply the transfer provi-

sions as they existed prior to the enactment of Public Act 88—680.[1] The State maintains that the new transfer hearing should be conducted pursuant to the presumptive transfer provision enacted by Public Act 90—590 and now in effect. 705 ILCS 405/5—805 (West 2000).

Defendant argues that the prohibition of *ex post facto* laws prevents the presumptive transfer provision now in effect from being applied at his new transfer hearing. The United States Constitution prohibits the application of criminal or penal measures to events occurring before their enactment: "[n]o State shall *** pass any *** ex post facto Law." U.S. Const., art. I, § 10. The Illinois Constitution contains similar language. Ill. Const. 1970, art. I, § 16. A law is *ex post facto* when it is both "retroactive" and "disadvantageous" to the defendant. *Fletcher v. Williams*, 179 Ill. 2d 225, 230, 688 N.E.2d 635, 638 (1997). A law is considered to be "disadvantageous" "if it makes criminal an act that was innocent when done, if it increases the punishment for a previously committed offense, or if it alters the legal rules of evidence to make conviction easier." *People v. Shumpert*, 126 Ill. 2d 344, 351, 533 N.E.2d 1106, 1109 (1989); see also *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648, 650 (1798).

Defendant asserts that applying the presumptive transfer provision enacted pursuant to Public Act 90—590 on remand would violate the prohibition against *ex post facto* laws because the presumptive transfer provision now in effect greatly increases the possibility that he will face an increase in punishment. In addition, defendant argues that subjecting him to the presumptive transfer provision now in effect would violate the *ex post facto* clause because it would alter the burden of persuasion at the transfer hearing, making it easier for the State to transfer him to criminal court. We consider each argument in turn.

In *In re R.T.*, 313 Ill. App. 3d 422, 729 N.E.2d 889 (2000), the defendant argued that his sentence should be vacated because he was sentenced under a statute (705 ILCS 405/5—33 (West 1996)) that was declared unconstitutional under *Cervantes*. Defendant contended that the statute that was effective prior to Public Act 88—680 should be applied because the judge had discretion to sentence him to probation under the old law but could only commit him under the new law. *R.T.*, 313 Ill. App. 3d at 432, 729 N.E.2d at 897. The State responded by arguing that the law enacted subsequent to the invalidation of Public

---

[1] Prior to the enactment of Public Act 88—680, the Juvenile Court Act of 1987 allowed for juveniles to be transferred to criminal court under "mandatory transfer" and "discretionary transfer."

Act 88—680, the Juvenile Justice Reform Act (705 ILCS 405/5—750(2) (West 2000)), should apply. In support of its argument, the State relied on *Dobbert v. Florida*, 432 U.S. 282, 53 L. Ed. 2d 344, 97 S. Ct. 2290 (1977).

In *Dobbert*, the defendant was sentenced to death under a death penalty statute that was later declared unconstitutional. The defendant argued that his sentence should be vacated and that he should be resentenced in accordance with the previous statute. Conversely, the State argued that the defendant should be sentenced under the current law. *Dobbert*, 432 U.S. at 294, 53 L. Ed. 2d at 357, 97 S. Ct. at 2299. In determining which statute should apply, the United States Supreme Court considered whether the statute in question was substantive or procedural and whether punishment would be more severe if the current statute were applied. Reasoning that the contested statute was procedural, because the new law only changed the role of the judge and jury in death penalty hearings and did not change the quantum of punishment, only the procedure of who would impose punishment, the Court determined that the current law should be applied. *Dobbert*, 432 U.S. at 294, 53 L. Ed. 2d at 357, 97 S. Ct. at 2299. The Court stated, "[i]t is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law." *Dobbert*, 432 U.S. at 294, 53 L. Ed. 2d at 357, 97 S. Ct. at 2299.

In *R.T.*, the appellate court used the considerations set forth in *Dobbert* and held that R.T. should be resentenced under the law prior to the enactment of Public Act 88—680, because the sentencing statute in question involved substantive, not procedural, changes. The new law in effect provided for a harsher range of punishment than the law in effect prior to Public Act 88—680 and was therefore " 'more onerous than the prior law.' " *R.T.*, 313 Ill. App. 3d at 432, 729 N.E.2d at 897, quoting *Dobbert*, 432 U.S. at 294, 53 L. Ed. 2d at 357, 97 S. Ct. at 2299.

Illinois courts have held that the transfer provisions of the Juvenile Court Act are a procedural mechanism used to determine in what division of the circuit court a respondent will be tried. *People v. P.H.*, 145 Ill. 2d 209, 222, 582 N.E.2d 700, 705-06 (1991). Whether a person is tried in juvenile or criminal court is merely a matter of procedure. *P.H.*, 145 Ill. 2d at 222, 582 N.E.2d at 705-06; *People v. DeJesus*, 127 Ill. 2d 486, 498, 537 N.E.2d 800, 806 (1989); *In re M.C.*, 319 Ill. App. 3d 713, 719, 745 N.E.2d 122, 127 (2001); *People v. Pena*, 321 Ill. App. 3d 538, 542, 747 N.E.2d 1020, 1021 (2001). In addition, a transfer hearing does not by itself result in the determination of guilt or innocence, nor does it directly result in confinement or other punishment. *People v. Taylor*, 76 Ill. 2d 289, 302, 391 N.E.2d 366, 372 (1979).

Following the reasoning used in *Dobbert*, it is clear that the application of the presumptive transfer provision as set forth in the Juvenile Justice Reform Act (Public Act 90—590) does not violate the prohibition against *ex post facto* laws because it does not provide for a greater punishment, but only affects the procedure by which punishment is determined. *Dobbert*, 432 U.S. at 294, 53 L. Ed. 2d at 357, 97 S. Ct. at 2299.

Defendant also argues that subjecting him to the presumptive transfer provision now in effect would violate the *ex post facto* clause because it would alter the burden of persuasion at the transfer hearing, making it easier for the State to transfer him to criminal court.

In *People v. Ramsey*, 192 Ill. 2d 154, 735 N.E.2d 533 (2000), the Illinois Supreme Court held that the application of a statute that amended the statutory insanity defense violated *the ex post facto* clause because the new statute increased the burden of proof a defendant must meet in order to establish that he was insane at the time of the offense. The court determined that the increase in the burden of proof had the effect of making it easier for the State to secure a conviction. *Ramsey*, 192 Ill. 2d at 158, 735 N.E.2d at 535.

The case presently before this court can be distinguished from *Ramsey*. Although the present presumptive transfer statute (705 ILCS 405/5—805(2)(b) (West 2002)) contains a statutory burden of proof ("clear and convincing") not present in the transfer laws prior to Public Act 88—680, this burden does not make it easier for the State to obtain a conviction, nor does it alter any defenses available. Unlike *Ramsey*, this new burden does not affect the determination of guilt or innocence. As previously discussed, a transfer hearing is a mechanism by which to determine in which division of the circuit court a respondent will be tried in. *P.H.*, 145 Ill. 2d at 222, 582 N.E.2d at 706. A transfer hearing does not by itself result in the determination of guilt or innocence, nor does it directly result in confinement or other punishment. *Taylor*, 76 Ill. 2d at 302.

Defendant suggests that the United States Supreme Court decision in *Carmell v. Texas*, 529 U.S. 513, 146 L. Ed. 2d 577, 120 S. Ct. 1620 (2000), strictly prohibits us from using the substantive/procedural dichotomy in *ex post facto* analysis. Defendant claims that the following supports his argument.

> "The better understanding of *Collins'* discussion of the *Ex Post Facto* Clause is that it eliminated a doctrinal hitch that had developed in our cases, which purported to define the scope of the Clause along an axis distinguishing between laws involving 'substantial protections' and those that are merely 'procedural.' [Citations.] *** Accordingly, *Collins* held that it was a mistake to

stray *beyond Calder's* four categories ***." (Emphasis in original.) *Carmell*, 529 U.S. at 539, 120 S. Ct. at 1636, 146 L. Ed. 2d 598. We disagree.

■ The decision in *Carmell*, finding a Texas statute violative of the constitutional provision prohibiting *ex post facto* application of laws which alter the state's burden of proof, was not based on a procedural versus substantive analysis. Rather, the court's decision was based on an analysis of the statute in light of the four factors enunciated in *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648, 650 (1798). The Supreme Court in *Calder* set forth criteria for finding a law violative of *the ex post facto* clause. An *ex post facto* law is:

"1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender." (Emphasis omitted.) *Calder v. Bull*, 3 U.S. (3 Dall.) at 390, 1 L. Ed. at 650.

■ Specifically relying on the fourth *Calder* category, the Supreme Court in *Carmell* found that the statue, which altered the legal rules of evidence by requiring less evidence to obtain a conviction, *i.e.*, changed the quantum of evidence, was a violation of the *ex post facto* clause. *Carmell*, 529 U.S. at 530, 146 L. Ed. 2d at 593, 120 S. Ct. at 1631.

Similar to *Carmell*, we did not stray from the four categories announced in *Calder* in determining that the retroactive application of the presumptive transfer statute effectuated by Public Act 90—590 would not violate the *ex post facto* clause. While we did discuss whether the presumptive transfer statute was procedural or substantive for purposes of determining whether a violation of the *ex post facto* clause would occur if it were applied retroactively to defendant on remand, we did so within the parameters set forth in *Calder*. As previously discussed, the statute in question here simply does not fall within the four categories as defined by *Calder*.

Based on the aforementioned reasons, we conclude that the retroactive application of the presumptive transfer provision enacted pursuant to Public Act 90—590, and currently in effect, does not

violate *ex post facto* principles and may be applied on remand. See *Pena*, 321 Ill. App. 3d at 544.

Cause remanded with instructions.

HOFFMAN and SOUTH, JJ., concur.